**UNITED STATES of America,**
**Plaintiff,**

v.

**The BOARD OF EDUCATION OF CITY OF BISMARCK, Defendant.**

**Civ. No. 2770.**

United States District Court
D. North Dakota,
Southwestern Division.

Dec. 8, 1954.

Grade School in Bismarck, North Dakota. After receiving the advance, the defendant, in August, 1945, contracted with Ritterbush Brothers, Architects, for the preparation of plans for the contemplated school addition. At the same time, the defendant held an election at which a bond issue in the amount of $75,000 was approved.

Ritterbush Brothers proceeded in accordance with the agreement with the defendant and the plans were prepared in 1945. Nothing further was done until March 8, 1949, when the defendant called for bids on the proposed plans. All bids received were rejected on April 16, 1949, as being greatly in excess of the amount approved for the project. The lowest bid covering construction of the building so planned approximated $258,000.

Immediately after the rejection of the bids covering the construction proposed by the first set of plans, the defendant re-employed Ritterbush Brothers to prepare a new set of plans referred to herein as the second set of plans. Bids covering construction of a building proposed in the second set of plans were called for, bids were accepted on July 12, 1949, contracts were awarded and the building was constructed. Ritterbush Brothers were paid $5,127 by the defendant for the preparation of the second set of plans. Previously, in 1945, they had received from the defendant as partial payment for the first set of plans $1,330, the amount advanced by the United States. The balance of their charges has not as yet been paid to them by the defendant, although the defendant admits liability therefor.

The statute under which the advance from the plaintiff to defendant was made, 50 U.S.C.A.Appendix, § 1671, provided in subsection (c) that such advances

"shall be repaid by such agency if and when the construction of the public works so planned is undertaken."

The plaintiff's theory is that construction of "the public works so planned"

William R. Mills, Asst. U. S. Atty., Bismarck, N. D., for plaintiff.

William R. Pearce (of Cox, Cox, Pearce & Engebretson), Bismarck, N. D., for defendant.

VOGEL, Circuit Judge.

This action was brought by the United States to recover the sum of $1,330 advanced to the defendant by the Federal Works Agency pursuant to 50 U.S.C.A.Appendix, § 1671 for the purpose of planning an addition to the Richholt

was undertaken when construction under the second set of plans was commenced, whereas the defendant contends that "the public works so planned" for which the advance was made was abandoned when the bids on the first set of plans were rejected, and that the addition to the Richholt School as built under the second set of plans was an entirely new or different project. Thus, the question for determination is whether the phrase "the public works so planned", as used in the statute, is broad enough in scope to include the building constructed by the defendant under the second set of plans. No cases arising under the statute involved have been cited by counsel or have been found and accordingly the Court is without precedent in attempting to determine the issue. Counsel for both parties have nevertheless ably presented their views on the question.

The Congressional purpose in enacting 50 U.S.C.A.Appendix, § 1671 was stated in subsection (a) as being:

"* * * to encourage States and other non-Federal public agencies to make advance provision for the construction of public works" and

"* * * to aid in financing the cost of architectural, engineering, and economic investigations and studies, surveys, designs, plans, working drawings, specifications, procedures, and other action preliminary to the construction of such public works * * *."

The defendant's argument centers around the idea that an entirely new set of plans was used as the basis of the building and that no benefit or very little benefit was derived from the first set of plans by the architects in preparing the second set. It argues that "work as planned" cannot simply mean an addition to the Richholt School but can mean only the building which would result from a contractor following a set of plans and specifications prepared by an architect. It claims that the benefit, if any, carrying over from the first set of plans was a normal concomitant in an architect's

business, since material gathered in planning one school may normally be used in another school plan. Defendant's main line of defense is that the "public works so planned" was abandoned on April 16, 1949, when all bids on the first set of plans were rejected and that since the building constructed was from an entirely new set of plans, it is not obligated to repay the advance.

The defendant also argues that plaintiff's complaint alleges only "that on or about October 12, 1949, the defendant commenced construction of a building *substantially similar* to the one for the planning of which was paid with the advance received from the United States, and said building has now been completed." (Emphasis supplied.) It argues that the complaint does not allege that defendant built the public works so planned nor the specific public works so planned. Defendant's counsel was of the opinion that the complaint did not state a cause of action under the statute and moved for a dismissal. At the time the motion was made, the Court reserved its ruling. That motion will now be denied.

In support of its contention that the building constructed from the second set of plans is not "the public works so planned", the defendant relies upon the uncontradicted testimony of Robert A. Ritterbush, one of the architects who prepared both sets of plans. This case was tried to the Court some time ago and counsel have not furnished a transcript of the testimony. Accordingly, the Court must rely upon its own memory as stimulated by its notes.

Ritterbush, who was, of course, testifying as an expert, stated in substance that the building represented by the first set of plans was not built; that the building represented by the second set of plans was built; that the second set of plans did not call for the same construction as the first set; that he was unable to use the computations of the first set of plans in preparing the second set; and that in preparing the second set of plans he had to start all over again. He stated in substance that the only simi-

larity between the first and second sets of plans was that both provided for brick buildings, similar concrete mix, and, of course, that they were both school buildings. He testified that he did not use any of the preliminary work obtained in preparing the second set of plans, although he admitted that he referred to the first set of plans and to other sets of school building plans in his office when he prepared the second set.

It is obvious that the building constructed from the second set of plans is not the same building as provided for in the first set of plans. The lowest bid on the first set of plans represented a construction cost of approximately $258,000. The bids which were accepted on the second set of plans totalled $113,933. The rejected bids on the first set of plans were made in April, 1949. The accepted bids on plan No. 2 were made in July of the same year, so it seems obvious that the building constructed is not the same building as provided for in the first set of plans.

To the Court's mind, however, that is not determinative. The statute under which this litigation arises provides for loans or advances "to aid in financing the cost of architectural, engineering, and economic investigations and studies, surveys, designs, plans, working drawings, specifications, procedures, *and* other action preliminary to the construction of such public works." At the time application was made for a loan or advance, the public work referred to by the members of the school board was "an addition to the Richholt School". The board minutes indicate that the members thereof had been apprised of the Government's willingness to make advances or loans to stimulate or encourage the construction of public works and they desired to take advantage of such statutory provision as they expected that an addition to the Richholt School would eventually be needed. They made their application on that basis and received the advance in question. They are the ones who made the contract with the architects for the first set of plans. The Government had no part in that contract. Its position was that of a loaning agency and its purpose was to stimulate the construction of public buildings entirely under the control of the agencies making the applications for loans or advances.

The determination of this case hinges on the meaning of the phrase "public works so planned" as used in the statute. The phrase as used is susceptible of two possible constructions. Either it refers to the public work present in the mind of the applicant at the time the funds were requested or else it has reference to a specific plan preparation to be financed by the advance. If it refers to the public work in the mind of the applicant at the time of making application for funds, the plaintiff should recover, since the evidence points to the fact that defendant contemplated "an addition to the Richholt School" at the time it requested the funds and such construction was eventually undertaken. If, on the other hand, it refers to a specific plan preparation which is to be financed by the advance, then a contrary conclusion may be in order, for the evidence is quite clear that the money advanced was paid to an architect for a set of plans which, due to construction costs, could not be and were not used.

Since there is apparently no precedent on which to rely, the meaning of the phrase in question must necessarily be determined by looking to the statute in which it is used and to the Code of Federal Regulations, and therefrom attempting to determine Congressional intent.

Congress provided that the advances should be repaid in certain instances— "if and when the construction of the public work so planned is undertaken." 50 U.S.C.A.Appendix, § 1671(c). But this subsection alone does nothing to resolve the intent of Congress as to what is meant by the phrase "public works so planned". Subsection (a), supra, setting forth the purposes of the statute, may shed some light on the intended meaning, however. From the wording used there, it would seem that Congress intended the advance to be used for the overall

planning of the project and that it should be repaid if such overall planning culminated in undertaking the construction of the public works.

Nothing in subsection (a) would appear to indicate any intent to the effect that if the first set of plans developed were unusable, repayment would not be required. The terms "investigations", "studies", "designs", "plans", "drawings", "surveys", "specifications" and "procedures" are all used in the plural. The conjunction joining these terms with the term "other action" which follows is "and", which indicates that Congress intended the funds advanced to apply to the entire planning for the project. Had they intended that the advance should apply only to a specific phase of the planning, it would seem that "or" would have been the proper conjunction.

Title 44, Section 202 of the Code of Federal Regulations offers support to the theory stated above. In Section 202.1(i) "plan preparation" is defined as follows:

"Architectural, engineering, and economic investigations and studies, surveys, designs, plans, working drawings, specifications, estimates of costs, procedures and other planning activities in advance of the construction of specific public works."

This definition of "plan preparation" bolsters the theory that the advance was to apply to the overall or entire planning procedure precedent to construction. In other words, it tends to support the idea that the phrase "public works so planned" refers to the public work in the mind of the applicant at the time it requested the advance.

Section 202.12 of the Code of Federal Regulations contains the following:

"*Repayment of advances.* Each advance shall be repaid in full without interest by the applicant when the contruction of the public work *for which the advance is made* is undertaken or started. The construction shall be considered as un-dertaken or started when the first construction contract is awarded or the applicant begins construction with its own forces." (Emphasis supplied.)

It can be noted that in this subsection of the Code of Federal Regulations the phrase "for which the advance is made" occupies the same position that the words "so planned" occupy in the subsection of the statute pertaining to repayment. 50 U.S.C.A.Appendix, § 1671(c). It would appear that the phrase "for which the advance is made" refers to the public work in the mind of the applicant at the time the request for funds was made; thus, also the words "so planned" should have a like meaning.

Under the statute and the regulations, it would have been entirely proper for the defendant to have used the advance in making an "economic investigation" or study to determine whether or not it could feasibly obligate itself for the construction of an additional school building, and such investigation could have included "estimates of costs" and "other planning activities". In effect, the preparation of the first set of plans and the advertising for bids thereon *was* an economic study resulting in a determination by the board that they could not afford to construct a building or addition as large or as elaborate as first contemplated and that they would have to reduce their ideas and cut their costs to fit the amount of money they had to expend. An "economic investigation" or the obtaining of an "estimate of costs" is entirely within the meaning of the statute providing for advances.

The defendant could have used the advance in any manner it saw fit as long as such use came within the broad provisions of the statute. It chose to use the advance to finance the preparation of building plans which proved prohibitive in cost when bids were called for. Having ascertained that, it proceeded to "cut the suit to fit the cloth" by constructing a less expensive building but it still was an undertaking to construct an addition

to the Richholt School—the purpose it had originally in mind and for which it asked for an advance.

This Court is of the opinion that the phrase "public works so planned" relates to the general plan contemplated by the applicant when requesting an advance of funds from the Government. The evidence indicates that the defendant had only a general plan for "an addition to the Richholt School" in mind when it applied for a loan. "An addition to the Richholt School" was eventually constructed. Thus, "the public works so planned" was undertaken and repayment of the advance is accordingly required. The mere fact that the defendant was unable to make use of the first set of plans or specifications prepared under their general plan should not defeat recovery. It was merely one step in the planning procedure or architectural study or investigation as referred to in the statute. Inability to use the first set of plans or specifications did not constitute an abandonment of the general plan of constructing "an addition to the Richholt School" for which the advance was made. Plaintiff is entitled to recover.

It will be so ordered.