UNITED STATES of America,
Appellant,

v.

CITY OF WENDELL, IDAHO, formerly
Village of Wendell, Appellee.

No. 14819.

United States Court of Appeals
Ninth Circuit.

Sept. 21, 1956.

Rehearing Denied Nov. 12, 1956.

---

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, William W. Ross, Attys., Dept. of Justice, Washington, D. C., Sherman F. Furey, Jr., U. S. Atty., Boise, Idaho, for appellant.

Branch Bird, Cecil D. Hobdey, Gooding, Idaho, for appellee.

Before POPE and CHAMBERS, Circuit Judges, and BOLDT, District Judge.

CHAMBERS, Circuit Judge.

In the spring of the year 1946, the Federal Works Administration supplied the City of Wendell, Idaho,[1] with $1,700 for advance planning for the "grading, draining, and paving of various streets" at Wendell. The city's obligation under the agreement, and under federal regulations which it accepted, was to "complete such plan preparation" and "repay such advance" when "the construction of the public work for which the advance is made is undertaken or started." Then, "undertaken or started" was defined as the time when "the first construction contract is awarded * * *."

This was all part of the plan [2] enacted by the Congress at the close of World War II to encourage local government units to get public works under way to provide against general unemployment which it was anticipated would arise with demobilization of the armed forces and the return to civilian life of military personnel.

Promptly, plans and specifications for paving 71 blocks of the Wendell streets were drawn by a contract engineer hired by Wendell. It was originally contemplated by the city that the streets would be paved with funds to be obtained by issuance of general obligation city bonds. The estimates of cost were thought by the city council to be too great for the city to undertake. Further, the cost

---

1. At the time of the acceptance of the loan, Wendell was the "Village of Wendell." It was then governed by a board of trustees presided over by a chairman. Later Wendell became the "City of Wendell" with a mayor and council.

2. The advances were made pursuant to Sec. 501(a) of the War Mobilization Act, 58 Stat. 791, which was adopted as follows:

"Sec. 501. (a) In order to encourage States and other non-Federal public agencies to make advance provision for the construction of public works (not including housing), the Federal Works Administrator is hereby authorized to make, from funds appropriated for that purpose, loans or advances to the States and their agencies and political subdivisions (hereinafter referred to as "'public agencies'") to aid in financing the cost of architectural, engineering, and economic investigations and studies, surveys, designs, plans, working drawings, specifications, procedures, and other action preliminary to the construction of such public works: *Provided*, That the making of loans or advances hereunder shall not in any way commit the Congress to appropriate funds to undertake any projects so planned.

"(b) * * * *Provided further*, That no loans or advances shall be made with respect to any individual project unless it conforms to an over-all State, local, or regional plan approved by competent State, local, or regional authority.

"(c) Advances under this section to any public agency shall be repaid by such agency if and when the construction of the public works so planned is undertaken. Any sums so repaid shall be covered into the Treasury as miscellaneous receipts.

"(d) The Federal Works Administrator is authorized to prescribe rules and regulations to carry out the purposes of this section. * * * "

would exceed the city's statutory legal limit on general bonds. So, in 1947 and for about a year the plans were put on the shelf.

In 1948–1949 the city appears to have sponsored another paving project of 41 blocks. Seven of the blocks were not in the original 71 blocks projected, but 34 blocks were. The paving may not have been laid on the original plan, but it is fair to say that most of the project could or may have been built according to the plans for which the federal government advanced the money to the city.

Wendell did not believe it was obligated to repay the United States when it paved the streets that it finally did pave. It refused demand for repayment. This suit for $1,700 was then brought by the United States.

Wendell defended on the ground that the original project was abandoned; that the actual project which was completed was not the contemplated project. It relied heavily on variance in area and size of project. It had affirmative defenses: 1. The first project would have exceeded the statutory bonding limit of the city. 2. The contingent liability was not in the annual appropriation of the city. 3. The original project was not authorized by a vote of two-thirds of the city's electors. 4. No ordinance for the work originally projected had ever been published.[3] Wendell also relied on the fact that the construction as actually done was under an improvement district and not by general obligation bonds of the city. The United States countered that the city was bound anyway by the contemporaneous written representations of the city officers that they had authority to execute the agreement and the city had authority to obligate itself in accordance with the agreement. In findings of fact and conclusions of law, the trial court agreed with the defendant city in all particulars. Judgment was entered in its favor. The United States appeals.

This court is disposed to be guided by the decision in United States v. Board of Education of City of Bismarck, D.C. N.D., 126 F.Supp. 338. That case started with the government planning loan. The initial plans for a school house produced cost estimates that were too expensive for available money. The subsequent plans appear to have used little of the original plans. The overlapping was slight, but apparently the site of the building was the same. Recovery for the advances for the planning was allowed.

While receipt into evidence here of the first plans drawn by the engineer would be quite proper, the question of the occurrence of the conditions requiring repayment should be primarily tested by the description of the proposed project in the application and agreement without particular emphasis on the original plans and specifications bought with the money furnished under the agreement. Here there developed within a reasonable time another project which did not parallel in identity but did overlap as to area. The completed paving is not unlike that described in the application. That is enough. The word planning itself imports fluidity.

This is not to say that if the application had asked for money for plans on the west side of town and a project had been commenced on the east side of town that the money would have become repayable. Or, if there had been a de minimis overlapping of area, then the conditions for repayment probably would not have been attained.

The switch from general obligation bonds to a city improvement district entirely managed and directed by the city, certainly is only a detail in the method of financing. There is no indication that a city improvement district in Idaho is an autonomous separate municipal arm of government. It is still part of the city. The city sets it up, lets its contracts and collects the assessments.[4] If the district

---

3. These four defenses were projected upon Idaho statutory law for municipalities.

4. The contract with the contractor for the paving which was signed on May 25, 1949.

It was in the name of the City of Wendell. Only once in the agreement is the improvement district mentioned and then only in the most off-handed way.

were completely a separate entity, then the government would have no case because the advancement was made to the City of Wendell for the city to do a job. The city did do a job, albeit not co-extensive.

As to the special defenses which Wendell says were in Idaho Municipal law, this court is not disposed to explore them. Likewise, it will not plumb the government's contentions of "mistake" based on the city's written representations that it could enter in the basic contract here involved. Further, it will not examine the contention that the defenses of Wendell do not apply against the United States. After studying H. J. McNell, Inc., v. Canyon County, 76 Idaho 74, 277 P.2d 554, this court is convinced that under the circumstances of this case the Idaho state courts would let a private party recover from Wendell the reasonable value on an implied contract. Obviously, the value here of $1,700 is $1,700. The measure is not the ultimate value to Wendell of that for which it spent the money. That ends our inquiry. See Gamewell Co. v. City of Phoenix, 9 Cir., 216 F.2d 928; Id., 9 Cir., 219 F.2d 180.

Judgment reversed.