**UNITED STATES of America,
Plaintiff,**

v.

**CITY OF ROSSVILLE, Defendant.**

**No. 1619.**

United States District Court
N. D. Georgia,
Rome Division.

Jan. 5, 1966.

Charles L. Goodson, U. S. Atty., Julius M. Hulsey, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Paul W. Painter, Rossville, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which plaintiff seeks to recover certain sums advanced by the Federal Works Agency (Later Community Facilities Administration, Housing and Home Finance Agency, now Department of Housing and Urban Development) to the City of Rossville, Georgia, in 1947 for plan preparation pertaining to construction for an outfall sanitary sewer. Basically, the agreement provided for such sums to be repaid upon construction of the proposed facility. The government contends that a proportionate part of the advances are now repayable because of certain improvements made in the City of Rossville by the City of Chattanooga, while the City of Rossville contends that the project was abandoned by it. The case was submitted on the following

## STIPULATION OF FACTS

It is stipulated by and between the plaintiff and the defendant, through their respective attorneys, that the following facts are true and correct and may be accepted by the Court without introduction of further proof:

(a) The City of Rossville, Georgia, defendant in this action is a corporate body politic organized and existing by virtue of the laws of the State of Georgia.

(b) That prior to the filing of the application for a Federal advance as hereafter described, the Department of Public Health of the State of Georgia sent a letter to the Federal Works Agency, dated April 10, 1947, a true copy of

which is attached hereto as Exhibit "A",[1] and made a part hereof.

(c) Defendant filed with the Bureau of Community Facilities, Federal Works

1. Exhibit "A" is as follows:

### State of Georgia
### Department of Public Health
T. F. ABERCROMBIE, M. D., DIRECTOR
ATLANTA

April 10, 1947

Federal Works Agency
Bureau of Community Facilities Div. 3
114 Marietta Street, N. W.
Atlanta, Georgia

To Sanders
Ans'd
No Ans. Required
Date 4-14-
File
Div

Gentlemen:

Some time ago your organization loaned funds to the City of Chattanooga, Tennessee for the purpose of designing an intercepting sewer along Chattanooga Creek. This stream heads in Georgia and receives a certain amount of sewage and industrial waste from Rossville, Georgia. Rossville's city limits border the city limits of Chattanooga and any design of sewers and sewage treatment to clean up Chattanooga Creek will be incomplete if Rossville wastes are not considered. The only logical method of handling the Rossville wastes is to extend the proposed Chattanooga Creek trunk sewer a short distance and take the wastes into the City of Chattanooga system.

Both the City of Rossville, Georgia and the City of Chattanooga have indicated willingness to enter into an agreement for joint disposal of their wastes. In order to consummate the agreement and provide a logical design for cleaning up the area, however, it is necessary that the City of Rossville, Georgia obtain a small amount of planning funds to cover design of their portion of the sewer.

The Rossville City Officials are preparing an application to your organization for the above funds. This application will be submitted in the near future. In view of the fact that Chattanooga's planning expenditure will be largely vitiated if consideration is not given to the Rossville wastes, it is requested that all possible consideration be given to the Rossville application.

It is understood that Chattanooga's designing engineers have already started work on the design of the Chattanooga Creek intercepting sewer and anything that can be done to expedite a decision in this matter will serve the best interests of that area.

Very truly yours,

N. M. deJarnette
Public Health Engineer

NMdJ:ew
cc: Polk Powell & Hendon
Birmingham, Ala

*Exh. "A"*

Agency (FWA) an agency of the Government of the United States of America (succeeded by the Community Facilities Administration (CFA), Housing and Home Finance Agency (HHFA), (Under Public Law 89–174, 89th Congress, H.R. 6927, approved September 9, 1965 [79 Stat. 667], the Housing & Home Finance Agency, including the Community Facilities Administration and other constituent units and branches, shall become the "Department of Housing and Urban Development" on November 9, 1965.) an application for an advance, dated April 21, 1947, for plan preparation pertaining to construction for an outfall sanitary sewer by applicant with an estimated construction cost of $163,500.00, including $7,100.00 for plan preparation (sub-sequently revised to $141,515.00 and $5,790.00, respectively, as evidenced by letters dated May 1, 1947, and May 6, 1947, attached hereto as Exhibits "B" [2] and "C" [2], respectively.) A true copy of said application is attached hereto, marked Exhibit "D" [3], and made a part hereof.

(d) Plaintiff and defendant entered into an Agreement designated "Agreement and Public Voucher for Advance," bearing Application No. Ga. 9–P–570, which was signed on behalf of the defendant on June 20, 1947, by Mayor Herman O. Bowman, acting under proper legal authority, and was accepted on behalf of the plaintiff on June 24, 1947. A true copy of said Agreement is attached hereto, marked Exhibit "E" [4], and made a part hereof.

2. Exhibits "B" and "C" only refer to changes in the application.

3. Exhibit "D" is the formal application, the only pertinent part of which is item 4, the description of proposed public work as follows:

*EXHIBIT A TO ACCOMPANY F.W.A. APPLICATION OF THE CITY OF ROSSVILLE, GEORGIA.*

The City of Chattanooga, Tennessee is now designing intercepting sewers and sewage treatment plant to collect and treat this sewage from the city. These facilities are for sufficient capacity to be extended throughout the urban area as necessary.

The City of Rossville, Georgia having a population of approximately 4,000 is located within the Chattanooga Urban Area immediately adjacent to the State line between Tennessee and Georgia, which is also the city limit line between Rossville and Chattanooga.

Sewage from the City of Rossville is now collected in a municipal sewer system and discharged into a dry branch which in turn discharges into Chattanooga Creek. This creek flows several miles through a developed section into the City of Chattanooga and into the Tennessee River. At the point of discharge of the Rossville City Sewers there is an old septic tank. The treatment given the sewage in this old tank is ineffective in that results are equivalent to the discharge of raw sewage into this stream. It is proposed to construct an outfall sewer from the present point of discharge of the City of Rossville sewers to the proposed Chattanooga Creek in-terceptor sewer, being planned by the City of Chattanooga. By following this plan of sewage disposal for Rossville the Rossville sewage will be conducted to the proposed Chattanooga Sewage Treatment Plant on the Tennessee River through the Chattanooga intercepting sewers, thus being a part of a coordinated community wide facility. This method of handling the Rossville sewage will also simplify sewage disposal for Rossville in that the degree of treatment required in a sewage treatment plant on the Tennessee River will be less than that required on Chattanooga Creek, and consequently more economical.

The City of Rossville contains an unusual large number of manufacturing activities for a city of its size as it is a part of the industrial and manufacturing area of Chattanooga. The industrial wastes from these manufacturing plants is greater than the flow of domestic sewage from the city, and therefore the proposed Rossville outfall sewer is somewhat larger than it would be under ordinary circumstances. This outfall sewer will be designed to handle the flow of industrial wastes from these manufacturing plants, as well as the estimated future flow of domestic sewage from the City of Rossville.

and item 16, proposing to finance the project with Revenue Bonds to be authorized in the sum of $163,500.00.

4. Exhibits "E" & "F" are merely the public voucher forms, wherein Rossville agrees to repay the advance "when required in accordance with the regulations" of the Federal Works Agency.

(e) In said Agreement, the defendant requested said FWA to advance $5,800.00 to the defendant for the purpose of plan preparation for construction of the public work described as "Sewer Facilities —New sanitary sewer outfall," (herein referred to as the "Project") located at Rossville, Georgia. Contingent upon receipt of the advance, defendant offered to complete such plan preparation and to repay said advance when required, in accordance with the regulations of the Bureau of Community Facilities, Federal Works Agency.

(f) That pursuant to the aforesaid agreement the United States of America did subsequently advance a total of $5,800.00 to the City of Rossville, Georgia. See Exhibit "F".[4]

(g) That the said City of Rossville, Georgia did use all of the money so advanced by the United States of America for the purpose of plan preparation of the Project located in and near the City of Rossville, Georgia; and did retain engineers who completed such plans for the Project; and said plans were for an outfall sewer line of the type or nature contemplated by the aforementioned application.

(h) In an effort to carry out the project, the City of Rossville obtained legislative authority of the General Assembly of Georgia (Georgia laws 1952, pages 2283 et seq.), a copy of said Charter Amendment being attached hereto as Exhibit "G",[5] and made a part hereof.

(i) During the year 1953, it was determined by the City of Rossville that it could not finance the construction of the project in a manner sufficient to obtain the desired rates or charges for its sewerage users. At this time the City of Rossville had obtained revised plans on which it made the above-mentioned determinations.

(j) On January 10, 1956, the City of Rossville, Georgia, entered into a contract with the City of Chattanooga, Tennessee, a copy of which is attached hereto and marked Exhibit "H".[6] The

---

5. Exhibit "G". The full act is available as cited.

6. Exhibit "H" is as follows:
THIS AGREEMENT, entered into this 10th day of January, 1956, between *THE CITY OF CHATTANOOGA, TENNESSEE,* a municipal corporation in Hamilton County, Tennessee, created and existing under the laws of the State of Tennessee (sometimes hereinafter referred to as *"CHATTANOOGA"*), and the *CITY OF ROSSVILLE, GEORGIA,* a municipal corporation in Walker County, Georgia, created and existing under the laws of the State of Georgia, (sometimes hereinafter referred to as *"ROSSVILLE"*),

*WITNESSETH:*
WHEREAS, Chattanooga and Rossville for many years have possessed inadequate facilities for the disposal of sewage, and untreated sewage and industrial waste from both Cities has been discharged into open streams, and particularly the Chattanooga Creek, which has become greatly polluted; and
WHEREAS, the increase in the population and industrial activity of said Cities have greatly increased the pollution of said streams caused by the discharge of raw sewage and industrial waste therein, and it has become necessary that prompt action be taken by said Cities to provide for the adequate treatment and disposal of sewage and industrial waste in order to protect the people in said Cities from possible epidemics and to protect the water supply of said Cities and adjoining communities from pollution; and
WHEREAS, Chattanooga is now engaged in the construction of intercepting sewers and district pumping stations, and has prepared plans for the treatment of sewage and industrial waste of sufficient size and capacity to take care of existing sewage and industrial waste of both Cities; and
WHEREAS, Rossville desires to have its intercepting sewer connected with Chattanooga's sewer system at the Tennessee-Georgia State Line, and for Chattanooga to conduct its sewage and industrial waste to Chattanooga's treatment and disposal works; and
WHEREAS, Chattanooga has contracted with the City Water Company of Chattanooga to collect sewer service charges as a separate item on its water bills, the charges being based on the amount of water used; and
WHEREAS, said Cities by virtue of the authority of their respective Charters and the laws of the State of Tennessee and State of Georgia, are fully authorized

to enter into contracts for the disposal of sewage and industrial wastes;

NOW, THEREFORE;

IN CONSIDERATION of the premises and the mutual advantages to both parties to the contract, it is agreed:

## I.

*ROSSVILLE* will:

A—Prepare, or have prepared by its Engineer, plans and specifications for the intercepting sewer to be built in Rossville, and will pay the engineering expenses for the preparation of plans and specifications to be approved by Havens & Emerson, Chattanooga's Consulting Engineer.

B—At its own cost and expense acquire easements necessary for the extension of an intercepting sewer from the Tennessee-Georgia State Line into Rossville, as shown on plans prepared by Schmidt Engineering Company.

C—Restore and repave its streets in which such sewer may be constructed, and maintain the surface of the easement after the intercepting sewer has been constructed.

D—Enter into a contract with the City Water Company of Chattanooga to bill and collect sewer service charges similar to the contract between Chattanooga and the City Water Company of Chattanooga.

E—Fix sewer service charges based upon the quantity of water used as shown by meters, which will be collected by the City Water Company of Chattanooga from all users of water, including Rossville, where sewers are available, which charges shall be paid to Chattanooga less the charges of the City Water Company for such collections, on minimum rates as follows:

### SEWER RATES PER 1,000 GALLONS PER MONTH

| | | | | |
|---|---|---|---|---|
| 1. | For the first | 50,000 gal. per mo. or less | | .125 |
| 2. | For the next | 50,000 gal.M or any part thereof | | .12 |
| 3. | For the next | 100,000 gal/M or any part thereof | | .11 |
| 4. | For the next | 250,000 gal/M or any part thereof | | .10 |
| 5. | For the next | 300,000 gal/M or any part thereof | | .09 |
| 6. | For the next | 500,000 gal/M or any part thereof | | .08 |
| 7. | For the next | 750,000 gal/M or any part thereof | | .07 |
| 8. | For the next | 1,000,000 gal/M or any part thereof | | .06 |
| 9. | For all over | 3,000,000 gal/M or any part thereof | | .05 |
| 10. | Special in excess of 720,000,000 gal/yr | | | .046 |

Minimum sewer service charges based upon water meter connection size shall be as follows:

| Meter Size in inches | Minimum Sewer Charges | |
|---|---|---|
| | Monthly | Quarterly |
| ⅝" | $ 0.40 | $ 1.20 |
| ¾" | .90 | 2.70 |
| 1" | 1.50 | 4.50 |
| 1½" | 3.50 | 10.50 |
| 2" | 9.00 | 27.00 |
| 3" | 20.00 | 60.00 |
| 4" | 48.00 | 144.00 |
| 6" | 108.00 | 324.00 |

and pass all Ordinances and Resolutions and make all rules and regulations necessary to put the sewer service charges into effect, beginning with the first meter reading after Chattanooga lets a contract for the construction of the intercepting sewers in Rossville, as hereinafter provided, and for the collection of such charges.

F—Require all owners or occupants of buildings to connect to its collecting system where sewers are available, and will cause sewer service charges to be collected from the owners of all property or buildings where sewers are provided.

G—Where the character of sewage or industrial waste discharged is such that it imposes and additional burden upon

said sewers or sewage treatment and disposal facilities above that imposed by the average sewage entering said sewers or sewage treatment and disposal facilities such cost necessitated thereby shall be an additional charge over and above the rates hereinabove set forth, and such additional charges shall be in accordance with Chattanooga Ordinances, rules and regulations governing the use of public sewers in Chattanooga. Rossville agrees not to discharge into its sewers sewage and industrial waste which is prohibited by the provisions of Chattanooga's Ordinances, rules and regulations governing the use of public sewers in Chattanooga. Chattanooga reserves the right to reject any sewage or industrial waste which does not meet the requirements of the aforesaid Ordinances, rules and regulations or amendments thereto.

E—Whenever a property or building upon which a sewer rental is imposed uses water for industrial or commercial purposes which water so used is not discharged into the sewer system the quantity of water so used and discharged into the sewer may be excluded in determining the sewer rental. Rossville agrees that in such event it will require the owner or occupant of such premises to install a device or devices, meter or meters, approved by Chattanooga to be installed by the owner or occupant for the measuring of such water not discharged into the sewer.

## II.

*CHATTANOOGA* will;

A—Construct an intercepting sewer, extending from the Tennessee-Georgia State Line to its treatment and disposal plant, of sufficient capacity to conduct not to exceed a rate of sixteen million (16,000,000) gallons per day of Rossville's sewage and industrial waste, as indicated by a master meter to be located in or near the Tennessee-Georgia State Line, to its treatment and disposal plant, and will treat and dispose of same.

B—Construct district pumping stations, treatment and disposal works of sufficient size and capacity to conduct, treat and dispose of Rossville sewage and industrial waste, not to exceed sixteen million (16,000,000,000) gallons per day.

C—After Rossville has provided the necessary easements for the intercepting sewers in Rossville and plans and specifications, which have been approved by Chattanooga's Consulting Engineers, Chattanooga will let a contract to its Contractor for the construction of the intercepting sewers in Rossville in accordance with the plans and specifications prepared and approved by *said Engineers, and will pay all the cost of constructing and* maintaining the intercepting sewers, except surface of the easements, during the term of this contract or any renewal or extension thereof.

D—Pay the cost of operating and maintaining its own intercepting sewers, pumping stations, treatment and disposal works, and appurtenances thereto.

## III.

There is certain property on the east side of Missionary Ridge within the corporate limits of Chattanooga which it will be more economical to connect to the *Rossville sewage system* than to construct facilities to connect to Chattanooga's system, and Rossville agrees that such sewers may be connected to the system in Rossville, and Chattanooga agrees that in the event there is any property within the corporate limits of Rossville which may be connected to the Chattanooga System more economically than to the Rossville sewage system to permit such connections to Chattanooga's system.

## IV.

The Ordinances, rules and regulations of Chattanooga with reference to acceptance, treatment, and surcharges for sewage and industrial waste shall apply to Rossville sewage and industrial waste to the same extent as they apply to Chattanooga sewage and industrial waste, and Rossville will authorize the Superintendent of the Chattanooga sanitary sewer system to make inspections in Rossville and to administer the above Ordinances, rules and regulations in the same manner as they are administered in Chattanooga.

## V.

It is mutually agreed that from time to time, and as often as shall *be necessary to comply with Chattanooga's Bond covenants*, the *sewer service charges shall be adjusted either by* increasing or decreasing rates, provided that the rates for Chattanooga and Rossville of the same class shall be the same.

## VI.

It is mutually agreed that this agreement shall be for a period of thirty (30) years from the date of the first billing of sewer service charged by the City Water Company to the users of Rossville sewers, and shall be self-renewing for periods of five (5) years each thereafter unless and until cancelled by not less than eighteen months' written no-

City of Chattanooga agreed to finance and construct a project, said project being similar to that so planned by Rossville when the application for the advance was made to the Government. The City of Rossville agreed to furnish plans and specifications for the sewer system, to pay the engineering expense for the preparation of the plans and specifications, to be approved by Havens and Emerson, Chattanooga's Consulting Engineers; acquire easements for the sewer system, at its own costs for the extension of an intercepting sewer from the Tennessee-Georgia State Line into Rossville; general obligation bonds in the amount of

tice by either party to the other of its intention to cancel same.

### VII.

Whenever notice to Chattanooga is required it shall be addressed to the Mayor, by registered mail, City Hall, Chattanooga, Tennessee. Whenever notice to Rossville is required it shall be addressed to the Mayor, by registered mail, City Hall, Rossville, Georgia.

All agreements herein made on the part of Chattanooga are made subject to the condition, hereby agreed to by Rossville, that they shall not be binding on Chattanooga until Rossville has entered into the contract with the City Water Company of Chattanooga, as provided in Paragraph D. hereof, for the collection of sewer service charges, and the Supreme Court of Georgia will have ruled, in a final Order, that Rossville has authority under its Charter and laws of Georgia to enter into such contract.

IN WITNESS WHEREOF, the parties hereto have caused their respective corporate names to be hereunto subscribed and their respective corporate Seals affixed by their duly authorized Officers, as of the day and year first above written.

|  | ATTEST: | THE CITY OF CHATTANOOGA, TENNESSEE, |
|---|---|---|
| (SEAL AFFIXED) | /s/ W. H. Zachry <br> Auditor. | By  /s/ P. R. Olgiati <br> Mayor. |

|  | ATTEST: | CITY OF ROSSVILLE, GEORGIA. |
|---|---|---|
| (SEAL AFFIXED) | /s/ J. D. Byrd <br> Clerk | By  /s/ J. M. Bryan <br> Mayor. |

STATE OF TENNESSEE } COUNTY OF HAMILTON Before me, a Notary Public, of the State and County aforesaid, personally appeared P. R. Olgiati, to me personally known, who, being duly sworn, did say that he is Mayor of the City of Chattanooga, Tennessee, a municipal corporation, the within named bargainor, and that the Seal affixed to the foregoing instrument is the official seal of said corporation, and that said instrument was signed and sealed on behalf of said corporation by authority of its Board of Commissioners, and said P. R. Olgiati acknowledged said instrument to be the free act and deed of the City of Chattanooga, Tennessee.

WITNESS my hand and Notarial Seal at Chattanooga, Tennessee, this 16th day of January, 1956.

/s/ Homer R. Holly
Notary Public

(SEAL AFFIXED)

My Commission
expires: April 9, 1959

STATE OF GEORGIA } COUNTY OF WALKER Before me, a Notary Public, of the State and County aforesaid, personally appeared J. M. Bryan, to me personally known, who, being duly sworn, did say that he is Mayor of the City of Rossville, Georgia, a municipal corporation, the within named bargainor, and that the Seal affixed to the foregoing instrument is the official Seal of said corporation, and that said instrument was signed and sealed on behalf of said corporation by authority of its Board of Commissioners, and said J. M. Bryan acknowledged said instrument to be the free act and deed of the City of Rossville, Georgia.

Witness my hand and Notarial Seal at Rossville, Georgia, this 8th Day of February, 1956.

/s/ Paul W. Painter
Notary public

(SEAL AFFIXED)

My Commission
expires: September 4, 1956

$14,000 being issued by Rossville in payment thereof; restore and repave its streets, in which such sewer may be constructed and maintain the surface of the easement after the sewer has been constructed; enter into a contract with the City Water Company of Chattanooga, a private utility corporation, to bill and collect sewer service charges and to fix sewer service charges which will be collected by the City Water Company of Chattanooga, said charges to be paid to the City of Chattanooga, Tennessee.

(k) That on May 29, 1958, the City of Chattanooga entered into a construction contract with Brown Brothers, Contractors, for the construction of the Rossville outfall sewer system as provided for in the contract between the City of Rossville and the City of Chattanooga, shown on Exhibit "I" [7] heretofore referred to, for $123,804.25. That Brown Brothers, contractors for the City of Chattanooga, proceeded to construct said facility and subsequently completed the same. That said facility so constructed is located in, along, or near many of the same streets or route as the facility planned with the Federal advance.

(l) That written demands dated September 15, 1960, November 15, 1960, and July 28, 1961, for repayment of said advance to the Government were duly made by CFA and received by the defendant, but defendant has not repaid said advance in whole or in part.

(m) That pursuant to Section 602(b) of the Housing Act of 1964 (P.L. 88–560, 78 Stat. 799; 40 U.S.C. § 462[b]) and regulations issued relative thereto (30 F.R. 5511–5512, April 17, 1965; 44 CFR) HHFA has determined that the amount of said advance presently repayable, on the basis of information available to it as to the proportionate part of the facility actually constructed, is $4,176.00, plus accrued interest; and that there is a continuing potential liability for the balance of $1,624.00, with interest.

(n) Attached hereto, and marked Exhibit "J" [8] are Regulations of the Housing and Home Finance Agency, Advance Plan Regulations dated January 1, 1946.

## CONCLUSIONS OF LAW

This case presents a unique question and a close one. It arises from another problem created by federal legislation at the close of World War II seeking to assist municipalities and other public agencies in meeting the needs of the general public, which had necessarily been disregarded during the war years. The scheme of the act,[9] was to provide funds in the form of "advances" for planning purposes for highway, recreational, hospital, and health projects. If the project was completed, normally through bond issues or other public financing, the "advances" were to be repaid to the government. On the other hand, if the project was not undertaken, the money was not to be repaid. In the meanwhile, the funds involved were neither an outright grant or an obligation due the United States, but in limbo dependent upon the project.

The act itself simply provided:

"(c) Advances under this section to any public agency shall be repaid by such agency if and when the construction of the public works so planned is undertaken. Any sums so repaid shall be covered into the Treasury as miscellaneous receipts." War Mobilization & Reconversion Act of 1944, § 501, 58 Stat., ch. 480, pub. law 458; U.S.Code Cong.Ser. (78th Cong.2d Sess.) at 788.

The regulations adopted pursuant to the act provided:

"(a) The Act authorizes assistance in the form of loans or advances of Federal funds, but in order to sim-

---

7. Exhibit "I". This exhibit is a bulky contract document showing specifications, etc. for "Rossville Outfall Sewer" for City of Chattanooga.

8. Exhibit "J". The pertinent parts are quoted in the opinion.

9. Title V of the War Mobilization and Reconversion Act of 1944 Public Law 458, 78th Congress, approved October 3, 1944; and, Public Law 269, 79th Congress, approved December 28, 1945.

plify the administration of the Act these regulations limit assistance to advances.

(d) An advance shall not be required to be repaid until the construction of the public work for which the advance is made is undertaken or started as provided in section 12 hereof. Until such construction is undertaken or started the advance shall not be deemed by the United States to be a debt or obligation within the meaning of any constitutional or statutory limitation.

(e) No interest charge shall be made for any advance."

The application and public voucher add no further enlightenment on the subject.

As might have been expected, various problems arose regarding the liability for repayment. In the main, these were two:

(1) Whether there was liability when the plans made with the advance were abandoned, but the project was eventually completed in some form or another?

(2) Whether there was liability when the project was completed by some agency other than the applicant?

There are apparently only five reported cases on the subject. Four of these deal with the abandonment of plans: United States v. Board of Education of City of Bismarck, D.C., 126 F.Supp. 338 (1954); United States v. City of Wendell, 237 F.2d 51 (9th Cir. 1956), cert. den. 352 U.S. 1005, 77 S.Ct. 565, 1 L.Ed.2d 549; United States v. City of Willis, D.C., 164 F.Supp. 324 (1958); aff'd 5 Cir., 264 F.2d 672; City of Greeley v. United States, 335 F.2d 896 (10th Cir. 1964). Two deal with the substitute agency: United States v. City of Charleston, D.C., 149 F.Supp. 866 (1957) (only collaterally); City of Wendell, supra. The government has presented two unreported cases dealing with the latter question, one of which ended in settlement by the City of Charleston (S. C.), the applicant,

when the project was constructed by a parks authority and the other in judgment against the City of Pleasureville (Ky.), though the constructing agency Henry County Water District was found not liable.

■ From these authorities, two principles have emerged:

(1) Liability exists whether the planning financed ends up in the project or not, if the "project in mind" is constructed at a later date.

(2) Liability exists regardless of details in the manner of financing or a change in the constructing agency.

■ The present case presents one further complication because the "project in mind," was essentially carried out not by City of Rossville, the applicant, or any subsidiary authority, but by a separate public agency and independent municipal corporation, the City of Chattanooga, Tennessee. Under the facts in this case, this difference is not deemed sufficient to escape the establishd principles.

It is clear to the court (and in fact is not seriously contested) that the "project in mind" when the application was made in 1947 and the enabling legislation was passed in 1952 and which was theoretically abandoned because of financing difficulties in 1953 was the same project carried out under the agreement with Chattanooga in 1956 and 1958. From its beginning, the sewerage plan was irretrievably connected with the sewerage plans and problems of Chattanooga.[10] The preliminary correspondence, the application itself, and the charter amendment all anticipated an arrangement for joint disposal of sewerage with Chattanooga. Under the contract with Chattanooga (Exhibit "H"), Rossville was to furnish all plans for construction and the court is convinced that the substance of the plans eventually used were those created with the government advance. Certainly there is substantial "overlapping" of the project planned by Rossville and the project constructed by Chat-

10. Rossville, Ga. is in reality a suburb of Chattanooga, Tenn., the Georgia-Tennessee border being a common city limit to both municipalities.

tanooga. See United States v. City of Wendell, 237 F.2d 51 at 53.

Likewise, it was anticipated by Rossville that the project would be financed by revenue anticipation certificates permitted under Georgia law (Code 87–801 ff.), whereby the capital costs are amortized by service charges over a period of time. Though Rossville used bond money to purchase land and easements, the balance of the construction costs were borne by Chattanooga under an arrangement whereby service charges amortized Chattanooga's capital costs. This is nothing more than a "detail in financing" as the citizens-users of Rossville eventually pay the costs under either plan. The essence of this finding is that Rossville obtained the project it applied for and under the act is, therefore, liable for the advance even though it was carried out by a separate public agency through contract. If Rossville had furnished its plans to a separate private corporation and contracted with that corporation to handle its sewerage business we would have no hesitancy in reaching this result. The fact that the contracting party was a separate public municipal corporation does not change the reasoning. Whatever obligation Rossville had with the government could not be defeated by contracting it away or by failure to provide for its repayment in the overall financial arrangement with Chattanooga. See United States v. City of Charleston, 149 F.Supp. 866 (8).

The question of time as it relates to liability for advances is of concern. If a project is begun in 1970, is it really the one in mind when an application was made in 1948? Most municipal problems of this type don't dissolve with the passage of time in a growing community. The absence of some statute of limitations seems unreasonable. To have created any in the original act might have put a premium on delay and thereby thwarted the purposes of the legislation; but sufficient time has now passed (over 20 years since the funds were originally appropriated) to permit some retrospective limitation on recovery without penalizing the diligent. This problem, however, directs itself to the Congress. Nor is the prospect of the resulting financial burden of any judgment on a small community a happy one. It is likely other public problems have replaced those involved here and it is hoped that this obligation may be satisfied by installments mutually agreed upon.

■ On the question of interest, we are constrained to deny any recovery. The regulations provided that no interest is to be charged. True, interest runs on a liquidated sum from time of maturity or demand. In this instance, however, the government only seeks recovery of $4,176.00 out of $5,800.00 advanced as "the proportionate part of the facility actually constructed." [11] Such determination was not made until this trial and in that sense the amount of the present obligation was unliquidated until now. The amount is not liquidated as of the time liability is determined, but when both time and amount are determined. Browne v. Makin, 177 F.2d 753 (5th Cir. 1949). As seen the court is unsympathetic with the delay in seeking this recovery and this appears to be a proper case for denying interest on equitable principles, particularly since the defendant has apparently proceeded in good faith. 28 U.S.C.A. § 1961; Swift & Co. v. United States, 257 F.2d 787 (4th Cir. 1958), cert. den. 358 U.S. 837, 79 S.Ct. 60, 3 L.Ed.2d 73.

Accordingly, let judgment issue in the sum of Four Thousand, One Hundred Seventy-six Dollars ($4,176.00) principal only.

It is so ordered.

---

11. The government contends this is "a continuing potential liability" for the balance of $1,624.00 on which no ruling is attempted.