**UNITED STATES of America**

v.

**CITY OF LEESVILLE, LOUISIANA.**

Civ. A. No. 74–722.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 12, 1975.

**944**

———◆———

Donald E. Walter, U.S. Atty., Leven H. Harris, Asst. U.S. Atty., Shreveport, La., for plaintiff.

Jack L. Simms, Jr., Leesville, La., for defendant.

EDWIN F. HUNTER, Jr., Chief Judge:

Plaintiff brings this action to recover $832.19 advanced to defendant by the Federal Works Agency, pursuant to Title V of the War Mobilization and Reconversion Act of 1944 for plan preparation pertaining to construction of a two-story municipal building to house the city hall, fire station and jail. Basically, the agreement provided for such sums to be repaid upon construction of the proposed facility.

The government contends that the advance is now repayable because of certain improvements made in the City of Leesville. The city contends the project was abandoned.

The factual setting is as clear as it is simple. In 1961, defendant commenced construction of a one-story municipal building to house the city hall and fire station. In April, 1973, technical data was received by the Department of Housing and Urban Development from the architect and engineers for defendant's fire station. On August 14, 1973, Herman J. Duncan, Director, Housing Management Division, made a final determination that the municipal building constructed was substantially the same as that originally planned with the advance proceeds; that the preliminary design served the purpose for which it was prepared; and that full repayment of the advance was due.

Defendant's initial argument is that the municipal building constructed in 1961 had no connection with and derived no benefit from the plans drawn with the advance funds. We reject this contention because of our factual conclusion that the "project originally contemplated" by defendant, when it applied for the advance, was indeed completed, albeit in a somewhat different form. United States v. City of Willis, 164 F. Supp. 324 (S.D.Tex., 1958), aff. 5th Cir., 264 F.2d 672; City of Greely v. United States, 335 F.2d 896 (10th Cir., 1964); United States v. City of Rossville, 249 F.Supp. 701 (1966).

The question of time as it relates to the statute of limitations is of concern. Reference is made to 28 U.S.C. § 2415, which provides:

"(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: * * *

*      *      *      *      *      *

"(g) Any right of action subject to the provisions of this section which accrued prior to the date of enactment of this Act shall, for purposes of this

section, be deemed to have accrued on the date of enactment of this Act."

Plaintiff carries a two-prong attack against the applicability of § 2415. The first, dealing with the reading in juxtaposition of 28 U.S.C. § 2415 and 28 U.S.C. § 2416, is easily repulsed while the second causes greater difficulty. The pertinent language of § 2416 reads:

"For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances; * * *."

■ The Government mailed letters to Leesville concerning the status of the public project, which went unanswered. Thus, facts material to the right of action were not known. The agency did not learn these material facts until April, 1973. Yet, what is the Government's answer to the conjunctive part of § 2416(c)? Surely, it cannot be seriously argued that plaintiff could not *reasonably* have known of the construction of the municipal building. A quick trip to Leesville would bring the revelation. Regional Circular No. 716, January 15, 1965, supplies revealing language:

"The recipient of an advance relating to a planned project previously placed by administrative action in the 'obsolete' category shall be asked to submit certain showings on the current status of such projects. A form letter to be sent to each recipient for this purpose is attached to this Circular (Attachment B). A stock supply of this form letter will be mailed to each Regional Office as soon as possible.

"If an answer to the above letter is not received within sixty days, a fol-

low-up request should be sent to the recipient under certified mail. Upon lapse of an additional 30-day period, a third letter should be dispatched. If no answer is received within a reasonable period of time, the Field Engineer should be requested to visit the recipient community when convenient to obtain the needed information. Such visits should be made during official travel for other program purposes in the area.[1]

In light of the above, § 2416 is inapplicable.

Proceeding to the second facet of the prescription problem, a casual reading of § 2415(a) and (g) reveals the crucial question: When does the right of action accrue? Plaintiff insists that the accrual date occurred when the Secretary made a final determination—August 14, 1973. Defendant counters by arguing that the decisive date occurred when construction began—1961, here. There is unfortunately a dearth of jurisprudence in this area. We are presented with a res nova question.

Plaintiff cites 40 U.S.C. § 462 (h)(2):

"(h)(2) The Secretary is authorized to terminate, upon such terms and conditions as he shall deem equitable, all or a portion of the liability for repayment of any advance made under this section, title V of the War Mobilization and Reconversion Act of 1944, or the Act of October 13, 1949. Whenever the Secretary determines that there is no reasonable likelihood that the public work, or a portion of the public work, planned with such advance will be constructed, he may terminate the agreement for the advance. Such determination shall be conclusive and shall be based on standards prescribed by regulations to be issued by the Secretary."

and,

40 C.F.R. 702.33:

"If the Administrator determines that a public work placed under con-

---

1. Attached in the record as Exh. VI to Plaintiff's Brief in Support of Motion for Summary Judgment.

■

struction is essentially the same as the public work planned with the Federal advance, the advance shall be repayable in full."

and,

40 C.F.R. 702.34(a):

"If the Administrator determines that construction of only a portion of a planned project or of a separate segment of a planned project has been undertaken, a proportionate repayment of the advance shall be due."

Plaintiff then postulates that the right of action cannot conceivably accrue before the Secretary makes a determination of liability. In essence, the contention is that the right of action comes into being only after the Secretary has determined that either a full or proportionate repayment is due. This is a deceptively simple syllogism: the right of action does not accrue until a debt becomes due, and the debt does not become due until the Secretary makes his determination. This syllogistic reasoning is appealing but not acceptable.

■ The right of action accrues when construction begins. Pertinent federal regulations and the statute itself compel this conclusion. The statute reads:

"(c) Advances under this section to any public agency *shall be repaid* by such agency *if and when the construction of the public works so planned is undertaken.* Any sums so repaid shall be covered into the Treasury as miscellaneous receipts." (Emphasis added.) War Mobilization and Reconversion Act of 1944, 50 U.S.C.A. Appendix, § 1671.

In the voucher executed between the parties in 1945, we find the following language: "to repay such advance when required in accordance with the regulations of the bureau dated May 1, 1945." Although we have no access in our library to these regulations of 1945, we have located the appropriate regulations.

In United States v. City of Rossville, 249 F.Supp. 701, at pp. 709–710, we find this revealing citation:

"The regulations adopted pursuant to the act provided:

"(a) The Act authorizes assistance in the form of loans or advances of Federal funds, but in order to simplify the administration of the Act these regulations limit assistance to advances.

"(d) An advance shall not be required to be repaid until the construction of the public work for which the advance is made is undertaken or started as provided in section 12 hereof. *Until such construction is undertaken or started the advance shall not be deemed by the United States to be a debt or obligation within the meaning of any constitutional or statutory limitation.*" (Emphasis added.)

In order to ascertain the import of "section 12," we turn to United States v. Board of Education of City of Bismarck, 126 F.Supp. 338 (1954) at p. 342:

"Section 202.12 of the Code of Federal Regulations contains the following:

"*Repayment of advances. Each advance shall be repaid* in full without interest by the applicant *when the construction of the public work for which the advance is made is undertaken or started.* The construction shall be considered as undertaken or started when the first construction contract is awarded or the applicant begins construction with its own forces." (Emphasis added.)

Even the current regulations buttress defendant's theory by providing, in pertinent part:

§ 702.32 Repayment of advance.

Each planning advance *shall be repaid* by the applicant without interest *when the construction of the public*

*work planned is undertaken or started.* (Emphasis added.) 44 C.F.R. 702.32

The United States builds its argument on 40 U.S.C. 462 and 44 C.F.R. 702.33–702.34. Our answer to its contention is simple. The debt or advance becomes due and owing when construction is begun. The commencement of the construction has a twofold effect: it begins the running of the limitation period and it necessitates a determination by the Secretary. That is the key to the puzzle! The debt is due at the start of the construction. The determination is necessary only to compute how much, if any, of the advance is owed and has no effect whatsoever on the limitation period. The subtitles of the sections referred to above (Termination of agreement for advance; advance repayable in full; proportionate repayment of advance) seem to fortify the soundness of this reasoning because they indicate the real purpose of the Secretary's determination—not to decide *when* the debt is due but to decide *how much* is due.

Proceeding to the jurisprudence, we encounter a paucity of reported cases on this particular facet. We find no reported case but do consider enlightening Judge Ingraham's dictum in United States v. City of Willis, Texas, 164 F. Supp. 324 (1958) at p. 326:

> "It is my opinion that *repayment of the advance matured when defendant undertook the construction* of its sanitary sewer system and disposal plant in 1954–1955. Plaintiff is entitled to judgment." (Emphasis added.)

For reasons set out above, we concur with Judge Ingraham's conclusion. Construction was begun in 1961. This suit was not filed until 1974. Relief under this complaint is precluded by 28 U.S.C. § 2415(a) and (g).

Judgment for the defendant is entered forthwith.

---

* Governor John D. Vanderhoof, Attorney General John P. Moore, and Assistant Attorney General Irvin M. Kent were serving in their designated official capacities at the time of trial.