### BROWNE et al. v. MAKIN.
### No. 12818.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1949.

754

T. M. Cunningham, Savannah, Ga., for appellants.

Reginald M. McDuffee, Savannah, Ga., Anton F. Solms, Jr., Savannah, Ga., for appellee.

Before HOLMES, WALLER and SIBLEY, Circuit Judges.

HOLMES, Circuit Judge.

This is an action brought by the plaintiff, Charles C. Makin, a member of the Savannah Bar Pilots Association, to recover two-thirds of his pay as a bar pilot from the Savannah Bar Pilots Association, jointly and severally, so long as he may live and remain incapacitated. The plaintiff predicates his recovery on a beneficial agreement, entered into by all the Savannah bar pilots, whereby any pilot who became sick or injured would receive a cer-

tain amount of his pay each month, depending on the nature and permanency of the sickness or injury.

Plaintiff's case was submitted to a jury on the sole question of defendants' liability, counsel for both parties having agreed that plaintiff was entitled to recover for permanent incapacity or not at all. The jury returned a verdict for the plaintiff, and the court referred the matter of accounting to a master to fix the liabilities of the several defendants. The master's findings were to the effect that the defendants should be liable severally, and not jointly, and the liability of each defendant was fixed. The court entered judgment on these findings, ordering each defendant to pay the amount stipulated, and enjoining the Savannah Bar Pilots Association from distributing to its pilots, active, retired, or disabled, such portion of their income as was apportionable to the plaintiff's claim, and further enjoining the individual pilots from receiving such amounts as were apportionable to the plaintiff's claim. The defendants severally appealed from this judgment.

The facts of the present controversy may be briefly summarized as follows: Plaintiff was one of the organizers, in 1912, of the Savannah Bar Pilots Association. From 1912 to 1918, he contributed to the benefit fund in accordance with the agreement. With the exception of the period during which he was serving as a lieutenant in World War I, he continued contributing from his pay, under the terms of the agreement, until 1924. From then until 1938 he did not actively continue as a bar pilot, but in 1938 he resumed the pursuit of his vocation, and continued as a pilot until March 15, 1942, when his middle finger was blown off by a blast from a shot gun, and he became physically incapacitated to perform his duties as such. Plaintiff had previously lost the use of his index finger on his left hand. A supplemental beneficial agreement was entered into in 1938, which reinstated Charles C. Makin as an active bar pilot, entitled to all the benefits of the Savannah Bar Pilots Association that might accrue to him by reason of his membership in said organization.

By reason of his injury, plaintiff was unable to perform the duties of a bar pilot, because in the pilotage of ships, the use of both hands and arms is requisite and necessary for a pilot at all times; and when he was unable to use both hands and arms, his ability properly to perform his duties was at an end.

Plaintiff notified Captain Spencer, of the Association, of his disability and incapacity. He was paid a pro rata share of his earnings until August 14, 1942, when he was dismissed from the pilotage service for being drunk and causing a disturbance in the streets. Plaintiff had been in trouble before, and had been warned by the Commission of Pilotage that if he got into any more trouble he would be dismissed. On being dismissed, the plaintiff demanded payment of his proportion of the monthly pay or earnings as provided by the beneficial agreement, which is as follows:

"Article 1. When a Pilot becomes temporarily incapacitated through sickness, injury or other cause than intoxication or willful neglect of duty, he shall receive sixty-six and two-thirds (66⅔) percentum of a Pilot's full pay, for the terms and period he may remain so temporarily incapacitated, provided a substitute is meanwhile appointed to take his place; and, if no substitute be appointed in his place, he shall for such period receive 100 percentum of a Pilot's full pay. In either event, such pay shall continue for a period not exceeding twelve months, after which time, if the incapacity remain, the said Pilot shall then automatically be placed under the provisions of Article III of this agreement.

"Article III. When a Pilot becomes permanently incapacitated for active service, through sickness, injury, or any cause, other than intoxication or willful neglect of duty, he shall receive sixty-six and two-third (66⅔) percentum of a Bar Pilot's full pay, so long as he may live and remain so incapacitated."

There was no dispute about the injury and the loss of plaintiff's finger, caused by discharge of the gun on the date alleged. Plaintiff was a licensed pilot in good standing at that time, which was March 15, 1942. His right to receive the payments requested was established, as of that date, if he should be entitled to same. Any subsequent dismissal or attempted revocation of his license by the Commission did not affect his rights so long as he remained incapacitated. According to the agreement between counsel in this case, the only issue presented to the jury was the permanency of the plaintiff's incapacity. If it was a temporary injury, then the plaintiff could not recover for any period subsequent to the date of his dismissal, because after that date he was no longer in the pilotage service. If it was a permanent injury, and the plaintiff carried the burden of convincing the jury of it being such, then he was entitled to recover because his injury was inflicted at a time when he was a pilot in good standing. The jury found for the plaintiff under the law and the facts as presented to it. If such a finding was supported by substantial evidence, this court is not at liberty to disturb it.

Our primary consideration is that of determining whether the verdict of the jury is supported by the evidence, but first we must dispose of a motion to dismiss this appeal, which states that appellant did not take his appeal within the time allowed by statute. In support of his position, appellee shows that the jury rendered its verdict on February 12, 1948; that on February 19, 1948, a final judgment on the merits was entered by the court; that appellants filed a motion for a new trial on February 20, 1948; and that the court overruled the motion for a new trial on July 14, 1948. Notice of appeal was filed on April 15, 1949. Appellee contends that the court rendered a final judgment on February 19, 1948, and after such judgment, appellants should have made a timely appeal. This court refuses to accept the plaintiff's interpretation of a final judgment, and denies his motion for dismissal of this appeal, because in this case, after the jury had rendered its verdict, there were many important matters left to be determined. The verdict of the jury merely established liability on the part of the defendants; it did not adjudicate what parties were liable. The lower court retained

this question for future decision, and later, when the plaintiff and defendants could not agree as to which of the parties were liable, referred the matter to a special master, who was ordered "to fix the amount due plaintiff under the judgment of February 19, 1948, and to hear and report on all undetermined questions of law and fact, and make his report within forty-five days." The master made his report on March 1, 1949, and did not find any liability on the part of the Savannah Bar Pilots Association or any of the representatives of deceased bar pilots. He did find the defendants severally liable; and, after a complicated method of accounting, determined the liability of each. It is manifest that several issues still remained to be disposed of and were not disposed of until the final decree of March 31, 1949. If the defendants had appealed before these issues were settled, their appeal would have been premature. The notice of appeal, having been filed on April 15, 1949, fifteen days after the final judgment of the court, rendered in accordance with the master's findings, was proper and timely.

■ The sole issue presented to the jury was whether or not plaintiff's injury was permanent, so as to incapacitate him for further service as a bar pilot. Appellants base their appeal on the contention that the appellee was not so incapacitated by his injuries as to keep him from being able to get on and off ships at sea or to use a ship's ladder. Appellants contend that the jury's verdict was contrary to the law and the evidence. Both sides introduced witnesses in support of their positions, and the jury found in favor of the plaintiff. Its verdict is fully supported by the evidence, and the court below did not err in letting it stand. Such evidence, in substance, is as follows: Plaintiff's duties required him to board and debark from vessels. This work was done during the entire year, regardless of weather conditions. He had to use what was commonly called a Jacob's ladder, which required full use of his hands, arms, and feet. It was hazardous work, because the operation called for perfect timing in mounting the ladder. Rough weather generally caused the waves to rock both boats; and a pilot in the process of making a change from one to the other, had to support the weight of his body with both of his hands. The Savannah bar is noted for its rough weather. If a pilot loses his balance or if his hand slips, he is faced with the probability of being crushed between the pilot's boat and the other vessel, or being carried by drift of the water into the propellers. Witnesses who observed the condition of the plaintiff's hand testified that they did not consider him capable of performing the duties of an active pilot. We think the jury was justified in its finding that the plaintiff, with the middle finger of his left hand missing, and without the use of his index finger, was not able to continue the strenuous duties of a bar pilot.

Plaintiff was entitled to share in the funds of this beneficial agreement, because he had contributed funds to it for a considerable time. The pilotage fees each month were pooled and, after all expenses were paid, certain disbursements were made to active and retired pilots. The net amount was divided in such a way that a retired or incapacitated pilot received two-thirds of the amount received by an active pilot. Appellee contributed his labor as an active pilot so that inactive pilots, retired or incapacitated, could draw their respective shares of the earnings. As a matter of fairness, it seems that when plaintiff's active labors were cut short on March 15, 1942, he should have been allowed to reap part of the harvest which he had helped to sow.

■ When the master's report was filed, plaintiff excepted to the findings that the defendants were liable severally, and not jointly and severally, and that interest should run only from the due date of each monthly installment; but, since no cross-appeal was filed, this matter should not be considered by us. In order for an appellee to enlarge or increase his rights under the judgment appealed from, he must take a cross-appeal. As to appellee's claim for interest, it need only be said that interest runs from the date of the judgment, and

not from the date of the jury's verdict.[1] The claims here were not liquidated or even ascertainable until the master made his findings. Under the Georgia Law, interest is not recoverable on an unliquidated demand.[2] The judgment appealed from is affirmed.

1. See Section 1961 of New Title 28 U.S. C.A., Judiciary and Judicial Procedure.

2. Code Section 57-110 of the Code of Geor-gia; Western & A. R. R. Co. v. McCauley, 68 Ga. 818; Lincoln Lbr. Co. v. Keeter, 167 Ga. 231, 236, 145 S.E. 68.