UNITED STATES of America for the Use and Benefit of ASTRO CLEANING & PACKAGING CORPORATION, Plaintiff-Appellant and Cross-Appellee,

v.

JAMISON COMPANY, Inc., and Continental Casualty Company, Defendants-Appellees and Cross-Appellants.

Nos. 19582, 19583.

United States Court of Appeals, Sixth Circuit.

May 15, 1970.

Raymond R. Murphy, Jr., Chattanooga, Tenn., Miller, Martin, Hitching, Tipton, Lenihan & Waterhouse, Chattanooga, Tenn., Keith Young, óf Mateer, Frey, Young & Harbert, Orlando, Fla., on the brief, for Astro Cleaning.

Blake Moore, Chattanooga, Tenn., Spears, Moore, Rebman & Williams, Chattanooga, Tenn., on the brief, for Jamison Co. and Continental Casualty.

Before PHILLIPS, Chief Judge, and CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the

Eastern District of Tennessee awarding damages to the Astro Cleaning and Packaging Corporation [hereinafter "Astro"], a subcontractor on a Government construction job, against the Jamison Company, Inc. ["Jamison"], the prime contractor and payment bondholder, and against Continental Casualty Company, Jamison's surety. Federal jurisdiction is invoked under the Miller Act, 40 U.S.C. §§ 270a–270d (1964). Astro appeals from the judgment of the District Court, claiming that it was not awarded enough money. Jamison and Continental Casualty Company cross appeal, claiming that Astro was awarded too much money.

On October 27, 1966, Jamison contracted with the United States to build a refrigeration facility at the Arnold Enginering Development Center in Coffee County, Tennessee, and to install therein tanks, plumbing and valves to contain liquid nitrogen and liquid oxygen. After installation and prior to being filled, liquid oxygen and liquid nitrogen tanks must be thoroughly cleaned and decontaminated to prepare them for receipt of the fluids. On February 1, 1967, Jamison subcontracted with Astro, which specializes in such jobs, to clean and decontaminate the tanks, plumbing and valves Jamison was installing. The subcontract, which was prepared by Jamison, specified neither when Astro's performance was to begin nor when performance had to be completed. On April 24, 1967, Astro moved its heavy and exotic equipment to the job situs and commenced performance. On May 15, 1967, having performed all the contracted work permitted by Jamison's progress on the project, Astro sat idle awaiting the installation of further facilities to be cleaned. On June 5 Astro verbally notified Jamison that insofar as

Astro was unable to use its specialized equipment on other jobs, it was losing money waiting for Jamison to install further facilities to be cleaned. At the same time Astro asked Jamison if it could move its equipment to another job and Jamison replied that Astro could not. Finally, sixty-six working days later, on August 3, Astro was able to resume work on the subcontract and finished the job on August 17, 1967. Astro sued Jamison for damages resulting from the 66-day delay during which Astro could not use its equipment on other projects. Jamison defended on the ground that Astro had failed to supply one week's notice of the delay as was required by the subcontract. Jamison also claimed a set-off of certain pipefitter labor it furnished Astro for which it was entitled to be reimbursed under the contract. The trial court granted Astro one week's delay damages, denied Jamison's claim for a set-off, and did not grant Astro interest on the damages it awarded.

■ This appeal raises essentially three issues: first, whether Astro proved actual damage as a result of Jamison's delay, and, if so, whether Astro's failure to provide Jamison with one week's notice of the delay damage causes Astro to forfeit damages for all but one week under clause 5(c) of the subcontract; second, whether under clause 2 of the subcontract, Astro was entitled to be supplied all its pipe-fitter labor by Jamison, or whether Astro was just entitled to that pipe-fitter labor "required to make continuous systems for circulation of the chemicals"; third, whether, assuming Astro was entitled to a judgment, Astro was entitled to interest on its judgment.[1]

■ With regard to the first issue, the District Court found that although

---

1. Where there is a distinction, federal substantive law controls over state law in Miller Act actions, however, interstices may be filled by incorporating state law. United States Fidelity and Guaranty Company v. Hendry Corporation, 391 F. 2d 13, 18 (5th Cir. 1968), cert. denied, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439; Aetna Casualty and Surety Company v. United States, 365 F.2d 997 (8th Cir. 1966); United States v. Malan Construction Corporation, 168 F.Supp. 255 (E.D.Tenn.1958). We do not distinguish between state and federal substantive law in this opinion because we feel that the principles we apply are valid federal and Tennessee law.

Astro sustained a financial loss as a result of Jamison's delay, since Astro did not notify Jamison of its loss within one week, Astro could not recover more than one week's delay under clause 5(c) of its subcontract, which provides:

*"The Subcontractor [Astro] agrees—*

\* \* \* \* \* \*

c) To make all claims for extras, for extensions of time and for damage for delays or otherwise, to the Contractor in the manner provided in the General Conditions of the Contract and Supplementary General Conditions for like claims by the Contractor upon the owner, except that the time for making claims for extra cost is one week."

This Court finds sufficient evidence in the record to support the District Court's finding that Astro sustained a financial loss as a result of Jamison's delay. Astro submitted testimony on each of the following points: (a) that Jamison unreasonably delayed installation of liquid oxygen and nitrogen tanks for 66 days; (b) that there were other jobs where Astro could profitably have used its equipment had it not been detained at the Government job site; (c) that Astro had no equipment it could have used on the other jobs; (d) that the reasonable daily rental value of the equipment detained at the Government job site was $305. Thus, the District Court's finding that Astro sustained a financial loss which it was unable to mitigate was not clearly erroneous.

■ Astro claims that under clause 5(c) it had no duty to provide one week's notice "for damage for delays," since clause 5(c) seems only to require one week's notice for "extra cost[s]," and, Astro claims, "damage for delays" are not "extra cost[s]." Therefore, Astro claims the District Court erred in not awarding it damages for the entire 66-day delay period. We disagree.

From a reading of the contract in light of the course of performance of the parties in this case, and considering the record as a whole, we feel that the finan-

cial losses Astro sustained as a result of Jamison's delay were regarded more by the parties as in the nature of extra costs than as damages for material breach of contract. The subcontract nowhere specifies the dates when Astro was to begin or complete performance; nor does the subcontract indicate when Jamison was to have completed installation of the tanks, plumbing and valves. Astro entered the job site with its equipment on April 24, 1967. There is testimony in the record that Astro entered the job at that time, without Jamison's permission, and reasonably anticipating the likelihood of delays in the installation of the facilities. That Astro did not regard time as of the essence is evidenced by the fact that the first notice it gave Jamison of its delay damage was three weeks after the delay began. The fact that Astro did not leave the job site after the delay began is further evidence that it did not consider the delay as a material breach of contract. Therefore, the District Court's award of damages for six days of the delay which the parties treated as extra costs was correct.

■ Turning to the second issue, the subcontract provided:

"It is understood that Jamison Company will furnish pipefitter labor, necessary spools, bolts, gaskets, and connections and other miscellaneous hardware required to make continuous systems for circulation of the chemicals."

During the course of performance, Jamison provided Astro pipe-fitter labor not only "required [for] continuous systems for circulation of the chemicals," but also to assist Astro in mixing certain chemicals. Jamison seeks to be reimbursed for that pipe-fitter labor it furnished that was not "required to make continuous systems for circulation of the chemicals." Astro claims, on the other hand, that under the above-quoted clause, Jamison was required to furnish Astro all the pipe-fitter labor Astro needed, not just that needed to make a continuous circuit.

The District Court held that the above-quoted clause was ambiguous, and admit-

ted evidence of preliminary negotiations of the parties to illuminate their intent. We agree that this clause was ambiguous, and find that the District Court's refusal to allow Jamison a set-off is not clearly erroneous.

Turning to the third issue, Astro claims that the District Court erred in failing to award interest on the contract balance of $16,500, which Jamison held up pending the outcome of this lawsuit. We agree.

"Where the amount for which recovery is sought, even though not liquidated, is based upon the readily ascertainable value of services or property, the general and better considered dule is to allow interest, at least in the absence of strong equities to the contrary." Michelsen v. Penney, 135 F.2d 409, 435 (2d Cir. 1943).

We hold that Astro is entitled to interest on the contract balance from August 17, 1967, the date Astro completed performance under the subcontract and payment was due.

This cause is remanded to the District Court for the purpose of determining interest due, and entry of judgment accordingly.