**EASTERN FEDERAL CORPORATION**

v.

**AVCO–EMBASSY PICTURES CORP.**
Civ. A. No. 11895.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 25, 1971.

Smith, Cohen, Ringel, Kohler, Martin & Lowe, I. T. Cohen and Scott Charlton, Atlanta, Ga., for plaintiff.

Troutman, Sams, Schroder & Lockerman, Robt. S. Sams, Tench C. Coxe, Milton A. Carlton, Jr., James E. Joiner, Atlanta, Ga., Javits, Trubin, Sillcocks & Edelman, New York City, for defendant.

## ORDER ON MOTION TO VACATE OR TO ALTER

EDENFIELD, District Judge.

This diversity action for breach of contract was tried non-jury before this court and the court awarded plaintiff damages of $102,155.44 and allowed a set-off of $62,288.46 against plaintiff. Defendant has now moved this court to vacate or alter its order of December 29, 1970, 326 F.Supp. 1280, and the judgment entered on this order. In the motion to vacate or alter, defendant argues that the court's finding that the parties made a binding exhibition agreement on June 22, 1967, that was modified on

February 3, 1968, is contrary to the evidence. Defendant also challenges the award of damages for loss of profits to the Miracle Theatre in Smyrna, Georgia, on the grounds that the award is unsupported by the evidence and that the award is unlawful because it exceeds the amount prayed for. Finally, defendant argues that the court erred in allowing plaintiff to recover pre-judgment interest on loss of profits damages.

## I. *Findings of Fact*

Defendant challenges several of the court's findings of fact as being contrary to the evidence. Essentially the fact findings challenges are those relating to the finding of a contract on June 22, 1967, the finding of a modification of the contract on February 3, 1968, and the finding that the Miracle Theatre was included in the modified contract.

### A. *Contract of June 22:*

In this motion for reconsideration, defendant does not deny that a contract was made on June 22, 1967, between plaintiff and defendant for exhibition of several of defendant's movies at several of plaintiff's theatres. However, defendant does contend that the contract of June 22, 1967, contained a firm play date of December 22, 1967 for exhibition of "The Graduate" at plaintiff's Coronet Theatre in Atlanta and Miracle Theatre in Smyrna. Defendant then argues that plaintiff materially breached its contract when it failed to exhibit "The Graduate" on December 22, 1967, and the court erred in not regarding the December 22, 1967 play date as being "of the essence" of the June 22, 1967 contract. The court is familiar with this contention. However, the court's factual findings are to the contrary. After a review of the findings of fact and the transcript, the court remains convinced that the factual findings are correct and the defendant's contentions are based on an erroneous interpretation of the facts. *See* the factual findings numbered 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 43, 44, 45, 46, 47, 48 and the references to the transcript therein. Defendant further contends that the plaintiff's cancellation of the December 22, 1967 play date at the Coronet Theatre breached the exhibition contract for the Miracle Theatre in Smyrna as well as the Coronet, because the contract was not severable. This argument is premised on the assumption that plaintiff breached the contract when it cancelled the December 22, 1967 play date. As indicated above, this court has found to the contrary; and defendant's argument need not be considered further.

### B. *Modification of February 3, 1968:*

Defendant contends that the parties did not intend to modify the June 22 contract when they met on February 3, 1968; rather, the parties were meeting to negotiate a new agreement. However, defendant claims this new agreement was never effected. These contentions are directly contrary to this court's findings that on February 3, 1968, the parties modified the existing contract of June 22, 1967, and that plaintiff's president, Meiselman, signed the blank forms with the understanding that the terms of the agreement, as modified, would be filled in. *See* findings of fact numbered 24, 25, 27 and 28, and the transcript references therein. Defendant also contends that its regional manager, James Frew, did not have the authority to bind defendant on a new contract or on modifications of an existing contract. The court has found that Frew did have actual authority to bind. *See* finding of fact numbered 25 and the transcript references therein. The court has reviewed the findings of fact and the transcript, and has discovered no reason to alter its findings.

### C. *Award of Damages for Miracle:*

Defendant contends that the Miracle Theatre in Smyrna dropped from the minds of the parties after the December

22, 1967 play date was cancelled for the Coronet in Atlanta and the Miracle in Smyrna. Defendant states that no subsequent play date was requested by plaintiff for exhibiting "The Graduate" at the Miracle. Specifically, defendant points to the absence of the Miracle in the modifications effected February 3, 1968. For these reasons defendant contends the Miracle somehow was removed from the contract. The court has found that the Miracle Theatre was included in the contract of June 22, 1967,[1] and that the contract of June 22, 1967 was not altered insofar as it applied to the exhibition of "The Graduate" at the Miracle Theatre in Smyrna, Georgia.[2] As defendant points out, the Miracle Theatre was not mentioned at the February 3, 1968 meeting which resulted in a modification of the June 22, 1967 agreement. However, the failure of the parties to modify the contract as it related to the Miracle, whether that failure to modify was intentional or not, does not make the agreement regarding the exhibition of "The Graduate" at the Miracle go away. Nothing short of a finding of an agreement to eliminate the Miracle from the contract, or a termination of the June 22, 1967 contract can eliminate the obligations of the parties regarding the Miracle in Smyrna. The evidence does not warrant either of these findings.

After reviewing the evidence admitted, the court remains convinced that the findings of fact initially entered on December 29, 1970, were correct. Insofar as defendant has moved to vacate this court's order because of erroneous findings of fact, this motion is denied.

## II. *Legal Questions*

### A. *Damages for loss of profits at Miracle:*

Defendant contends the court's award of damages for loss of profits at the Miracle Theatre in Smyrna was unlawful because it exceeded the amount sought by plaintiff. Apparently, defendant's contention is based on an item of documentary evidence submitted by plaintiff. It is true that one of plaintiff's exhibits (P–35) contained plaintiff's version of the computation of damages. This computation showed a loss of profits of $12,858.06 at the Miracle in Smyrna while this court awarded $22,779.75. However, the loss of profits indicated on P–35 is not the amount claimed in the complaint. Paragraph "17.a" of Count Two of the amended complaint by reference to paragraphs 10 and 11 of Count One seeks recovery of $300,000 for loss of profits at plaintiff's theatres as a result of the breach of the alleged contract by defendants. Paragraphs 10 and 11 do not separate the damage into loss of profits at specific theatres. Rather, the paragraphs merely claim $300,000 loss of profits at plaintiff's theatres for loss of profits. The total award for the loss of profits at the Miracle and the Cherokee was $102,155.44. Thus it is difficult to see how defendant can say that the court awarded more than was claimed by plaintiff.[3] The real test must be whether the award of damages is supported by the evidence. This court is convinced that the award is supported by the evidence. The court cannot be bound by the plaintiff's own computation of damages.[4]

---

1. *See* finding of fact number 7.

2. *See* finding of fact number 20.

3. Of course, in any event the trier of fact is not bound in awarding damages by what plaintiff claims. The question of whether the trier of fact may return more damages than prayed for is one of federal procedure and federal law. Riggs, Ferris & Geer v. Lillibridge, 316 F.2d 60 (2d Cir. 1963). Federal Rule of Civil Procedure 54(c) provides that in non-default cases the "final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." This rule clearly allows an award of damages in excess of the amount prayed for. If necessary, the court may allow amendment of the ad damnum clause to conform to the verdict. Stewart v. Banks, 397 F.2d 798 (5th Cir. 1968).

4. One of the primary reasons for a difference between the court's computations and the plaintiff's computations arises

**1256**

### B. *Award of Damages for Pre-Judgment Interest:*

Defendant contends that this court allowed plaintiff to recover pre-judgment interest on unliquidated damages contrary to Georgia law. In the court's computation of damages in Appendix II of the order of December 30, 1970, the court computed damages of $19,061.91 for the Miracle Theatre in Smyrna and $65,913.16 for the Cherokee in Atlanta. No award for interest was indicated in this computation. However, the narrative portion of the court's order concludes: "It is FURTHER ORDERED that the plaintiff have and recover interest at 7% per annum on the net amount of its recovery regarding the Cherokee and the Miracle. The interest shall date from February 21, 1968, concerning plaintiff's recovery on the amount of Cherokee's damages. The interest shall date from April 10, 1968 concerning the plaintiff's recovery on the amount of the Miracle's damages."

The Georgia statutes frame the question of whether pre-judgment interest must be allowed in terms of whether the damages are liquidated or unliquidated. Regarding liquidated damages, pre-judgment interest is required by Ga. Code Ann. § 57–110.[5] However, Ga.Code

---

from a difference in sequence in considering the various cost factors. For instance, in its computations on the Miracle, plaintiff deducted first from the projected gross receipts of the Miracle, the amount of rental due the defendant distributor. After the rental was paid, plaintiff deducted the house operating expense from its portion (gross receipts less rental paid to the distributor). (*See* P–35 at page 1255.) The thrust of this approach is to require plaintiff-exhibitor to pay the house operating expense from plaintiff's share of the gross receipts. In arriving at damages this court reversed the process. That is, from the gross receipts the court first deducted the house operating expense. Then from the gross receipts less house operating expense, the court applied the film rental agreement. The thrust of this approach is to require defendant-distributor to share a part of the house operating expense. A review of the record reveals that in fact the defense attorney on cross-examination indicated complete agreement with the court's approach:

"Q. All right, sir. Is it not true, Mr. Meiselman, that the scale is constructed so that at any point between sixty percent, the top of the scale, and twenty-five percent on the bottom of the scale, the exhibitor receives an assumed house expense and the distributor and the exhibitor share equally in the—what I call profits that are left over from the exhibition of the picture?

"A. Based on a theoretic, pure reciprocal basis that is correct.

"Q. All right. So is it not to the exhibitor's advantage to state his house expense to the—

"THE COURT: Let me ask a question right here. Is the net effect of that, that the exhibitor's expense first comes off the top and they divide what's left?

"MR. CARLTON: That is exactly it, Your Honor.

"THE WITNESS: No, that is not exactly it. That is assuming automatically that you gross more than what your assumed expenses are.

"MR. CARLTON: That's correct, Your Honor, within the operation of the scale itself which only goes down to twenty-five per cent, it operates as Your Honor has inquired.

"THE WITNESS: But it—

"THE COURT: Of course, you might have a week you didn't even make expenses.

"THE WITNESS: That's correct, sir.

"THE COURT: But eliminating that situation, assume you had a week that falls within the twenty-five percent. The exhibitor gets his expenses and they divide what is left according to the scale?

"THE WITNESS: Theoretically that is the way it works." (T–288–289).

5. Ga.Code Ann. § 57–110 provides:
"All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, from the time of the demand. In case of promissory notes payable on demand, the law presumes a demand instantly and gives interest from date."

Ann. § 20–1408 [6] has been construed in a breach of contract action involving unliquidated damages as allowing the jury, in its discretion, to include in the award an amount for pre-judgment interest. Tifton, T. & G. Ry. Co. v. Butler, 4 Ga. App. 191, 60 S.E. 1087 (1908). *See also* Western & Atlantic R. R. Co. v. Brown, 102 Ga. 13, 29 S.E. 130 (1897) (tort action referring to Ga.Code Ann. § 20–1408). Where the damages are unliquidated, it has been held error for the judge to charge that if the jury finds for the plaintiff on the contract it *must* award interest from the date of the breach. Snowden v. Waterman & Co., 110 Ga. 99, 35 S.E. 309 (1899); Mendenhall v. Nalley, 81 Ga.App. 517, 59 S.E.2d 283 (1950). Rather, the Court of Appeals has held the trial court should instruct the jury that it may in its discretion award pre-judgment interest on the unliquidated damages. *Tifton, T. & G. Ry. Co., supra.*[7]

On the basis of the above-mentioned cases, as well as several others,[8] it could be argued that Ga.Code Ann. § 20–1408 allows recovery of interest in a breach of contract action for unliquidated damages. However, the Fifth Circuit has previously considered the question of whether pre-judgment interest may be obtained in a breach of contract action for unliquidated damages. In

Browne v. Makin, 177 F.2d 753 (1949), a Savannah river boat pilot brought an action for disability pay on a contract with the Savannah Bar Pilots Association. The pilot was found to be disabled and entitled to recovery. A question was raised concerning interest on the award. The Fifth Circuit held:

"The claims here were not liquidated or even ascertainable until the master made his findings. Under Georgia Law, interest is not recoverable on an unliquidated demand." 177 F.2d at 757.

In Merchants Ins. Co. v. Lilgeomont, Inc., 84 F.2d 685 (5th Cir. 1936), plaintiff insured sued defendant insurance company on a fire insurance policy covering insured's burned house. The trial resulted in a verdict for the face amount of the policies and for additional damages (7 per cent) in lieu of interest. The Fifth Circuit held that the claims on the insurance policy were disputed and thus did not present liquidated demands. The court then considered both Ga.Code Ann. § 57–110 and Ga.Code Ann. § 20–1408. It concluded: "There was thus no ascertainment or liquidation of the amount payable until the jury fixed it, and under the Georgia decisions referred to no interest before judgment was recoverable." 84 F.2d 690. *See also,* Lumbermens Mut. Ins. Co. of Mansfield, Ohio v. Cantex

---

6. Ga.Code Ann. § 20–1408 provides:
  "In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery."

7. In *Tifton, T. & G. Ry. Co.* the trial judge charged the jury as follows concerning pre-judgment interest on unliquidated damages:
  "If you should find from the evidence in favor of the plaintiff against the defendant, I charge you that it is within your discretion whether you shall give interest on that amount, if you find a certain amount, from the time it was due up until the present time. Charg-

ing that (if you give interest) you cannot give more than 7 per-cent, taking into consideration the facts and circumstances in arriving at the same. If you should find in favor of the plaintiff, the form of your verdict would be 'We, the jury, find in favor of the plaintiff' so many dollars."

  The Supreme Court held that the trial judge's charge substantially conformed to Civil Code § 3800 which as quoted in the opinion is exactly the same as the present Ga.Code Ann. § 20–1408.

8. *See also* Smith v. Maples, 114 Ga.App. 529, 151 S.E.2d 815 (1966); Atlantic Coastline R. R. Co. v. Henderson Elevator Co., 18 Ga.App. 279, 88 S.E. 101 (1916).

**1258**

Mfg. Co., 262 F.2d 63 (5th Cir. 1958); Aetna Ins. Co. of Hartford, Connecticut v. Taylor, 86 F.2d 225 (5th Cir. 1936); Jacksonville Blow Pipe Co. v. Trammell Hardwood Flooring Co., 170 F.Supp. 537 (N.D.Ga.1958), aff'd. 264 F.2d 717 (5th Cir. 1959). Thus despite the implication in some Georgia cases that pre-judgment interest may be awarded in a breach of contract action for unliquidated damages, the Fifth Circuit cases set out above require a contrary ruling. For this reason, the interest awarded plaintiff in this court's order of December 29, 1970 should be written off as unauthorized by law. An altered judgment consistent with this ruling will be filed with this order.

In summary, the court has reviewed the evidence and determined that the initial findings concerning the making of a contract on June 22, 1967 and the modification of the contract on February 3, 1968 were correct. The damages awarded the plaintiff regarding the Miracle Theatre were within the ad damnum clause of the complaint; but even if the damages exceeded those sought by the plaintiff, this court would be required to award the damages warranted by the evidence. The court has reviewed the evidence of damages regarding the Miracle and is convinced the evidence requires the award made in Appendix II of the order of December 29, 1970. Finally, the court has concluded that pre-judgment interest awarded in the initial order and judgment should not be allowed. Accordingly, the judgment entered on January 26, 1971 should be amended by deleting from the judgment all amounts awarded the plaintiff as interest. For the reasons stated above, the defendant's motion to vacate is denied. Defendant's alternative motion to alter the court's judgment is granted to the extent indicated above regarding the deletion of interest from the plaintiff's award.