UNITED STATES of America For the
Use of GEORGIA ELECTRIC SUPPLY
COMPANY, INC., Plaintiff-Appellee,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant-Appellant.

No. 80–7259.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 21, 1981.

O. Torbitt Ivey, Jr., Augusta, Ga., for defendant-appellant.

Roy D. Tritt, Augusta, Ga., for plaintiff-appellee.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

RONEY, Circuit Judge:

In this Miller Act case, an electrical supplier for the construction of a post office successfully sued on a payment bond furnished by defendant.[1] On appeal, defendant asserts as error (1) the finding that the supplier complied with the Miller Act notice requirement; (2) the award of attorneys' fees and prejudgment interest; (3) the failure to reduce the judgment by certain claimed credits; and (4) the rejection of an estoppel defense. We reverse the award of attorneys' fees but affirm the judgment in all other respects.

In August 1976, a general contractor entered into a contract with the United States Postal Service for construction of a new post office in Thomson, Georgia. Defendant, United States Fidelity & Guaranty Company, furnished a payment bond as required by the Miller Act.[2] This bond guaranteed payment for laborers or materialmen who remained unpaid by the general contractor or its subcontractors.

In September, the general contractor subcontracted the electrical work on the project. During the course of its work, the subcontractor purchased electrical supplies on account from plaintiff, Georgia Electric Supply Company.

After repeated failure to receive payments on its account, plaintiff refused to supply further materials until the account was brought current. After the general contractor made a payment directly to plaintiff and the subcontractor's principal officers executed personal guaranties, plaintiff resumed shipment.

The building was accepted for occupancy by the Postal Service on September 30, 1977, although various work and repairs

---

1. 40 U.S.C.A. § 270a *et seq.*

2. 40 U.S.C.A. § 270a.

continued on the project for the next few months. On December 29, 1977, plaintiff notified the contractor that $21,000 was still owed on its account. After payment was refused, plaintiff filed this action under the Miller Act.[3] In a special verdict, a jury awarded it the amount claimed as due on the account, together with prejudgment interest and attorneys' fees. Defendant appeals.

### Notice Under The Miller Act

The most difficult question in this case is presented by defendant's contention that plaintiff is barred from asserting its Miller Act claim because it failed to mail a notice of claim within ninety days of the last shipment of materials.

The Miller Act provides that a materialman such as plaintiff

> shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person . . . furnished or supplied the last of the material for which such claim is made.[4]

Failure to comply with this ninety-day notice requirement will bar a claim on the payment bond.[5]

It is undisputed plaintiff notified the general contractor of its claim on December 29, 1977. Therefore, counting back ninety days from this date, plaintiff must have "supplied the last of the material" within the meaning of the Miller Act on or after October 1, 1977, in order for notice to have been timely.

Evidence at trial indicated that although most of the materials for the project were supplied by plaintiff prior to October 1, three shipments were made after this crucial date. The first shipment, on November 11, included three phone receptacle covers and a switch plate. These parts had been back ordered since June and were billed to the electrical subcontractor at a total cost of $1.68. The second shipment, on November 22, consisted of a "Hubbell lens," which fitted over an outside light. The lens originally installed was cracked, although whether it cracked during shipment or after installation was not made clear. The billed cost was $7.80. The final shipment, on December 5, included fifteen "emergency lighting ballasts," which were battery packs that fit into interior fluorescent lighting fixtures, including exit lights. They were safety features designed to keep certain lights on even if there was a loss of power. The ballasts had been mistakenly omitted from the lighting fixtures, which were installed earlier. It is not clear whether the omission was the fault of the manufacturer, the electrical engineer or plaintiff. In any event, the invoice for the ballasts indicated a price of approximately $1,800, although no charge was billed. Plaintiff explained that no charge was made because the cost of the ballasts had already been included in the price of the lighting fixtures, previously billed.

The parties hotly dispute the legal significance of these shipments. Defendant contends the materials were furnished merely for repairs or the correction of defects and, as such, did not extend the notification period under the Miller Act.[6] Plaintiff, on the other hand, argues the materials were supplied as part of the original contract and were necessary to fulfill the original job

---

**3.** The Miller Act provides that suit must be brought in the name of the United States for the use of the person suing, although the United States is not liable for the payment of any costs or expenses of the suit. 40 U.S.C.A. § 270b(b).

**4.** 40 U.S.C.A. § 270b(a).

**5.** *See, e. g., United States ex rel. Light and Power Utilities Corp. v. Liles Construction Co.,* 440 F.2d 474 (5th Cir. 1971). *Cf. General Insur-*

ance Co. v. United States ex rel. Audley Moore & Son, 406 F.2d 442 (5th Cir.), cert. denied, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 173 (1969) (failure to comply with Act's statute of limitations forecloses suit).

**6.** *See, e. g., United States ex rel. Light and Power Utilities Corp. v. Liles Construction Co.,* 440 F.2d 474 (5th Cir. 1971); *United States ex rel. State Electric Supply Co. v. Hesselden Construction Co.,* 404 F.2d 774 (10th Cir. 1968).

specifications. Therefore, it concludes, the materials tolled the notice period.[7]

The line drawn by this Court and in other jurisdictions, whether the materials were furnished for repairs or as part of the original contract, is admittedly hazy. As we noted in an earlier decision: "[E]ach case must be judged on its own facts and . . . sweeping rules about 'repairs' offer little help in the necessary analysis."[8] The factors to consider include the value of the materials, the original contract specifications, the unexpected nature of the work, and the importance of the materials to the operation of the system in which they are used.[9]

On which side of the line the shipments in the present case fall is a close question. Standing alone, the materials in the first two shipments would most likely be insufficient to extend the notification period, in view of their minimal value and the clear evidence the Hubbell lens supplied in the second shipment only replaced a previous lens. The emergency ballasts provided in the third shipment, however, could well be viewed as supplied in accordance with the original contract and as a necessary portion of the lighting system. The fact no separate charge was made for these ballasts does not preclude their effect for notification purposes.[10]

The district court cannot be reversed for concluding a jury question was presented. The jury heard extensive testimony and evidence concerning the three shipments. It was then adequately instructed by the trial court on the law with respect to their effect for Miller Act purposes. On this record, we are not convinced that the jury erred in finding these shipments extended the notification period under the Act, "whether our task be viewed either as a simple examination of the [jury's] findings of fact for indications of clear error or as an independent application of law to fact."[11] Defendant has simply failed to meet its appellate burden of establishing error in the district court's denial of a judgment n.o.v. or error in the finding of the jury.[12]

*Attorneys' Fees*

The defendant next argues that the jury erred in awarding attorneys' fees.

In *F. D. Rich, Inc. v. United States ex rel. Industrial Lumber Co.*,[13] the Supreme Court decided that federal rather than state law governs the award of attorneys' fees in Miller Act cases. The Court held that absent a contractual basis, attorneys' fees may be awarded only where the opposing party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[14]

In the present case, the sole allegation of bad faith is that defendant did not independently investigate the merits of plaintiff's claim. Defendant's response was limited to contacting the general contractor to see whether it had hired an attorney to investigate and defend against the claim. De-

---

7. *See, e. g., Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164 (5th Cir. 1973); *United States ex rel. Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964); *United States ex rel. General Electric Co. v. Gunnar I. Johnson & Son, Inc.*, 310 F.2d 899 (8th Cir. 1963).

8. *Johnson Service Co. v. Transamerica Insurance Co., supra*, 485 F.2d at 173.

9. *Id.* See also *Trinity Universal Insurance Co. v. Girdner*, 379 F.2d 317 (5th Cir. 1967).

10. See *United States ex rel. General Electric Co. v. Gunnar I. Johnson & Son, Inc.*, 310 F.2d 899, 903 (8th Cir. 1963).

11. *Johnson Service Co. v. Transamerica Insurance Co., supra*, 485 F.2d at 174. Cf. *United States ex rel. State Electric Supply Co. v. Hes-*

selden Construction Co., 404 F.2d 774, 776 (10th Cir. 1968) (whether materials were supplied for repairs or as part of the original contract is a question of fact subject to review under the "clearly erroneous" standard).

12. *Gardner v. California*, 393 U.S. 367, 370, 89 S.Ct. 580, 582, 21 L.Ed.2d 601 (1969); *Berenter v. Staggers*, 362 F.2d 971, 972 n.2 (D.C.Cir. 1966); *Danaher v. United States*, 184 F.2d 673, 675 (8th Cir. 1950).

13. 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

14. *Id.* at 129, 94 S.Ct. at 2165. See also *United States ex rel. Garrett v. Midwest Construction Co.*, 619 F.2d 349, 352 (5th Cir. 1980).

fendant's claims supervisor testified as to the company's general practice: "[W]e have a Master Assurity Agreement signed by [the general contractor], and when we receive the lawsuit, or any claim, we direct it directly to [the contractor], calling on them to handle it in accordance with the provisions of the Master Assurity Agreement holding us harmless against any loss." Record Vol. 2 at 183.

The testimony of the claims supervisor, the sole evidence on which plaintiff based its claim for attorneys' fees, fails to establish that defendant acted vexatiously or in bad faith. It was not unreasonable for defendant to leave the investigation and defense of the claim to the general contractor, who was more familiar with the project and who apparently assumed ultimate liability on the claim pursuant to an indemnification agreement. Moreover, the validity of plaintiff's claim was sufficiently in doubt to justify the decision to litigate. As the Eighth Circuit held in a Miller Act case:

> The mere finding . . . that the sureties failed to investigate the claims and relied upon a solvent principal will not, by itself, justify the assessment of vexatious damages where the record demonstrates that the principal presented a reasonable, albeit unsuccessful, defense. Where there is an open question of fact or law determinative of the insured's liability, the insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay.[15]

The award of attorneys' fees must therefore be reversed.

**15.** *United States ex rel. R. W. Vaught Co. v. F. D. Rich Co., Inc.*, 439 F.2d 895, 905 (8th Cir. 1971).

**16.** *See, e. g., Atlantic Electric, Inc. v. Allis-Chalmers Manufacturing Co.*, 375 F.2d 726, 727 (5th Cir. 1967); *Charles R. Shepherd, Inc. v. United States ex rel. Sullivan, Long & Hagerty, Inc.*, 292 F.2d 146, 147 (5th Cir. 1961).

**17.** 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). *See* text at notes 13 and 14 *supra.*

**18.** *Id.* at 127, 94 S.Ct. at 2164.

### Prejudgment Interest

The defendant contends the jury erred in awarding prejudgment interest.

Unlike attorneys' fees, it is not entirely clear what law governs the allowance of prejudgment interest. While this Court has previously held that prejudgment interest in Miller Act cases is a question of state law,[16] the Supreme Court's decision in *F. D. Rich*[17] leaves this position in doubt. The Court, in holding attorneys' fees governed by federal law, stated broadly: "The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law."[18] Since prejudgment interest falls within the "scope of the remedy" available to a Miller Act claimant, it appears that under the authority of *F. D. Rich*, its allowance must be initially determined as a matter of federal law.

Such a determination, however, merely leads us back to state law. Neither the Miller Act nor any other applicable federal law provides standards for the allowance of prejudgment interest. It therefore seems appropriate to look to state law "as a matter of convenience and practicality."[19] In the present case, the appropriate reference is to Georgia law, since the construction project was located and the contracts and payment bond were executed in that state.

Defendant argues, correctly, that Georgia law generally allows prejudgment interest only on liquidated claims.[20] It then

**19.** *Louisiana & Arkansas Ry. Co. v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir. 1966) (allowance of prejudgment interest on a claim under the Interstate Commerce Act is question of federal law, but reference should be made to state law). *See also United States ex rel. Astro Cleaning & Packaging Corp. v. Jamison Co.*, 425 F.2d 1281 (6th Cir. 1970) (while federal law controls Miller Act actions, interstices may be filled by incorporating state law).

**20.** Ga.Code Ann. §§ 20–1408; 57–110 (1977). *See also Browne v. Makin*, 177 F.2d 753, 757 (5th Cir. 1949); *Eastern Federal Corp. v. Avco-*

argues plaintiff's claim was unliquidated because of uncertainty over credits claimed by defendant in the reduction of the indebtedness. It is clear under Georgia law, however, that an amount claimed as due on an open account is considered liquidated even though the debtor or its surety claims deductions or setoffs.[21] Moreover, defendant's claimed credits against the amount owed were rejected by the jury. As one Georgia state court noted:

> A defendant is not entitled to set up a defense against payment, and, when it is established that the defense is invalid, still profit by being absolved from the payment of interest on money illegally retained by it.[22]

The jury cannot be held to have erred in awarding prejudgment interest.

### Other Errors Alleged

 The remaining errors asserted by defendant may be disposed of without extensive discussion. Defendant argues the jury failed to credit it with certain payments made on the account, and with liquidated damages charged against the general contractor by the Postal Service for delays in the completion of the building. Defendant contends the delays were caused by plaintiff.

The jury was presented with testimony and evidence concerning the disputed payments and liquidated damages. Both parties produced reasonable evidence in support of their respective positions. Upon review of the record, we cannot say the jury erred in rejecting the credits claimed by defendant.

 The final error concerns the rejection of the estoppel defense. While defendant's argument is not entirely clear, it ap-

pears to contend plaintiff was estopped or had waived its right of suing on the payment bond because it resumed shipments only in reliance on personal guaranties executed by the subcontractor's principal officers. Defendant concedes this to be a novel argument.

This Court has held in an analogous situation that the taking by a subcontractor of a promissory note from the general contractor does not release the surety of its liability to the subcontractor under a Miller Act payment bond.[23] This principle appears to be equally applicable here. Moreover, we have also held "the right to sue on the surety bond is a right created by statute, and in absence of a novation or a clear expression to the contrary, the contention that there has been a waiver or release of that right must fail."[24] Defendant has failed to establish that plaintiff expressly waived its right to sue on the payment bond by accepting the personal guaranties. The jury did not err in rejecting the estoppel defense.

### Conclusion

The award of attorneys' fees is reversed. The judgment is affirmed in all other respects.

AFFIRMED IN PART, REVERSED IN PART.

---

Embassy Pictures Corp., 331 F.Supp. 1253, 1256–58 (N.D.Ga.1971).

21.  See, e. g., Clow Corp. v. Metro Pipeline Co., 442 F.Supp. 583 (N.D.Ga.1977); Carnes v. Mobley's Tire & Recap Service, Inc., 134 Ga. App. 913, 216 S.E.2d 703 (1975); Haygood v. Smith, 80 Ga.App. 461, 56 S.E.2d 310 (1949).

22.  Buck Creek Industries, Inc. v. Crutchfield & Co., 133 Ga.App. 80, 210 S.E.2d 32, 34 (1974).

23.  United States ex rel. Construction Products Corp. v. Bruce Construction Corp., 272 F.2d 62, 66 (5th Cir. 1959).

24.  Warrior Constructors, Inc. v. Harders, Inc., 387 F.2d 727, 729 (5th Cir. 1967) (footnotes omitted). See also United States ex rel. Friedrich Refrigerators, Inc. v. Forrester, 441 F.2d 779, 782–83 (5th Cir. 1971).